34093.   HANKS, by next friend, *v.* GEORGIA POWER COMPANY *et al.*

Decided July 16, 1952—Rehearing denied July 29, 1952.

*Wright, Oxford & Love,* for plaintiff in error.

*MacDougald, Troutman, Sams & Schroder, Howard, Tiller & Howard, James A. Branch, Thomas B. Branch Jr.,* contra.

SUTTON, C.J. ■ The special demurrers to sub-paragraphs (a) and (b), alleging the defendant's negligence, challenge the correctness of the pleader's conclusion that the defendant violated its duty to the plaintiff by failing to mark its bus "School Bus." Code § 68-311 is captioned, "School busses required to be marked," but the body of this section defines a school bus as a motor vehicle used in transporting school children to and from schools. We think that this act was intended to apply to busses primarily and exclusively used for such transportation, and not to a bus operating as a common carrier for hire, traveling on a schedule along an established route, and transporting school children only as an incident of its duty to transport any member of the public who wishes to ride and pays his fare. The petition in the present case alleges that the defendant's bus was operated both as a common carrier and as a school bus, but it would be unreasonable to hold that the bus of a common carrier of passengers becomes a school bus whenever a school child going to or from school boards it, thereby imposing statutory

duties upon the carrier and upon other traffic using the streets beyond the common-law duties of exercising certain degrees of care in respect to the passengers' safety. For instance motor vehicles approaching a school bus are required to stop and to remain stopped while the bus is discharging or taking on school children. Code, § 68-310. On the other hand, a driver of a motor vehicle may slow down and pass at a distance of at least eight feet from an ordinary passenger-carrying bus which he has overtaken while it is taking on or discharging passengers. Code, § 68-303 (h). There is also a difference in the manner of operating a school bus and a common carrier. The school bus ordinarily takes on school children at the street or highway in front of their homes and carries them to the school grounds; after school hours the children again board the bus at the school, and each child is taken to his respective home. The bus in the present case is alleged to have been making a scheduled run on a regular line; it took on school children and other passengers at various points along the line and carried them, not to their homes but to certain established stopping places, which might be near or far from the passengers' intended, ultimate destinations.

Therefore, we hold that Code § 68-311 applies only to vehicles which are being primarily used at a given time for the purpose of transporting school children between home and school, whether by contract with the school authorities, with the school children, or with their parents, and that this Code section does not apply to the common carrier in the present case, which was carrying school children only incidentally to its duty of carrying members of the public. In the case of *Dishinger* v. *Suburban Coach Co.*, 84 *Ga. App.* 498 (1) (66 S. E. 2d, 242), the bus there in question was held to be a school bus and required to be so marked where it was used to transport school children to and from a certain school, and, when so appropriated, carried only school children and no others. The bus in the present case was not so appropriated or used. The demurrers to specifications of negligence (a) and (b) were properly sustained.

■ The defendant's demurrers to the remaining allegations of negligence, sub-paragraphs (c), (d), (e), (f), and (g), assert that these allegations of negligence were not supported by

pleaded facts showing a breach of duty on the part of the defendant power company to the plaintiff. The allegations were that the driver stopped 30 feet from a regular stop for the bus, failed to notice the approaching laundry truck, opened the door of the bus to the plaintiff without warning her of the approaching truck, and thereby failed to furnish her a safe place to get off the bus.

The petition alleged that the plaintiff was "at the rear door for the purpose of alighting from said bus and crossing from the west side of Argonne Avenue to the east side, a fact well known to the operator of said bus." It is elsewhere alleged that the operator of the bus knew that the plaintiff was ready to get off. In the absence of any pleaded facts showing how the operator knew or had any means of knowing the fact that the plaintiff was going to cross the street—construing the petition against the pleader on demurrer—the only fact alleged to have been known to the operator is that the plaintiff was at the rear door of the bus ready to get off. It is not alleged where the plaintiff's home was, or where her final destination was, other than the stop nearest her home, and it appears that there were business establishments across the street. Ordinarily, the driver of a school bus, who takes on the children and discharges them at their homes, necessarily knows where his young passengers live, and that they will go there at once, which is a circumstance to be considered in determining the safety of the place where the children have been allowed to leave the school bus. See *Gazaway* v. *Nicholson*, 61 *Ga. App.* 3 (5 S. E. 2d, 391); s.c., 190 *Ga.* 345 (9 S. E. 2d, 154).

The bus in the present case was not a school bus and was alleged to have been carrying the plaintiff to its regular stopping place nearest her home, where it stopped, 30 feet from the regular stop and 3 feet from the right curb of the street. The petition fails to show that the place where the bus stopped for the plaintiff to alight was not a safe place. The bus stopped on its right-hand side of the street, some 3 feet from the curb, and about 30 feet south of the sign marking the regular bus stop, and 10 feet before reaching the curb line of the intersecting street; but it does not appear that the place where the bus was alleged to have stopped was not just as safe a place as if it had

stopped exactly at the sign marking the bus stop. See *Locke* v. *Ford,* 54 *Ga. App.* 322 (3) (187 S. E. 715). Could it reasonably be said that the driver of the bus was bound to foresee when he opened the doors that the plaintiff would pass around his bus in such a period of time as to be in the path of the laundry truck, which was approaching at an alleged speed of 55 miles per hour, and which therefore would have been at a considerable distance from the bus when the driver opened the doors? We think not. As stated in the case of *Dishinger* v. *Suburban Coach Co.,* 84 *Ga. App.* 498, 507 (supra): "Where, however, such a child [age seven] is not deposited on the highway or in such a way as to face it in alighting, and the driver of the bus does not know that to reach its home the child must cross the highway after being discharged from the bus, it cannot be said that the driver is negligent in not depositing the child in a safe place, and that the bus company is liable for an injury sustained by the child thereafter at the hands of another." Also, see *Greeson* v. *Davis,* 62 *Ga. App.* 667 (9 S. E. 2d, 690). The allegations of the defendant's negligence, sub-paragraphs (c), (d), (e), (f), and (g), show no breach of the defendant's duty to the plaintiff, and the special demurrers thereto on such grounds were properly sustained.

■ The petition failed to set out a cause of action against the defendant Georgia Power Company, and the court did not err in sustaining its demurrers thereto and in dismissing the action as to the power company.

*Judgment affirmed. Felton and Worrill, JJ., concur.*