63810. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. TUCK et al.
63811. TUCK et al. v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al.

CARLEY, Judge.

On December 1, 1978, plaintiff-appellee Jeffrey Tuck, a minor, was riding home from school on a bus owned and operated by defendant-appellant Metropolitan Atlanta Rapid Transit Authority (MARTA). The bus was not identified and equipped as a "school bus" in the manner provided by Code Ann. § 68A-706. When the MARTA bus stopped across the street from Jeffrey's home, he stepped from the bus and ran in front of the bus and into the street. While in the street, Jeffrey was struck by an automobile owned and operated by Anthony Rucker.

Jeffrey and his father, S. J. Tuck, each brought suit against MARTA and Rucker. Subsequently, the plaintiffs and MARTA entered into a joint stipulation of material facts and filed cross motions for summary judgment to determine whether the MARTA bus was, at the time of the incident, a "school bus" within the definition of Code Ann. § 68A-101 (46) (b) and thus in non-compliance with the identification and equipment requirements of Code Ann. § 68A-706 (c). The trial court granted the plaintiffs' motion for summary judgment as to this issue and denied MARTA's motion. Accordingly, the case was submitted to the jury under instructions that MARTA's non-compliance with Code Ann. § 68A-706 (c) "at the time of the accident amounts to negligence as a matter of law." The jury returned verdicts in favor of both plaintiffs, apportioning the damages recoverable against each defendant. With

regard to S. J. Tuck's claim for his son's medical expenses, the verdict stated: "We, the jury, find for the plaintiff S. J. Tuck $4,500.00 in compensatory damages against defendant(s) MARTA in the amount of $700.00 and Rucker in the amount of $3,800.00." With regard to Jeffrey Tuck's claim, the verdict returned stated: "We, the jury, find for the plaintiff Jeffrey Tuck, b/n/f S. J. Tuck, $38,400.00 in compensatory damages against defendant(s) MARTA in the amount of $6,000.00 and Rucker in the amount of $32,400.00." The trial court, after making inquiry from the jury foreman, entered a final judgment on both verdicts. Said judgments made no apportionment between MARTA and Rucker and were entered, in favor of S. J. Tuck and Jeffrey Tuck in the amounts of $4,500 and $38,400 respectively, against both defendants "jointly and severally."

In Case No. 63810, MARTA appeals from the joint and several judgments entered on the verdicts returned for the plaintiffs. In Case Number 63811, the plaintiffs cross-appeal, asserting as error an evidentiary ruling by the trial judge and certain jury instructions.

### Case No. 63810

1. MARTA asserts that, as a matter of law, the bus in which Jeffrey Tuck was riding on December 1, 1978, was not a "school bus." MARTA relies upon former Code Ann. § 68-311 as construed in *Hanks v. Ga. Power Co.,* 86 Ga. App. 654, 656-657 (72 SE2d 198) (1952): "We think that this act was intended to apply to busses primarily and exclusively used for [transporting school children to and from schools], and not to a bus operating as a common carrier for hire, traveling on a schedule along an established route, and transporting school children only as an incident of its duty to transport any member of the public who wishes to ride and pays his fare ... [I]t would be unreasonable to hold that the bus of a common carrier of passengers becomes a school bus whenever a school child going to or from school boards it, thereby imposing statutory duties upon the carrier and upon other traffic using the streets beyond the common-law duties of exercising certain degrees of care in respect to the passengers' safety."

However, resolution of the issue presented for review also requires consideration of the holding in *Dishinger v. Suburban Coach Co.,* 84 Ga. App. 498 (66 SE2d 242) (1951).In *Dishinger,* a case also involving former Code Ann. § 68-311, it was held: "[T]he petition shows that the Suburban Coach Company Inc. was using a bus to transport school children to and from Cascade Heights School; that the bus, when so appropriated, hauled only school children; and that the bus here involved was not marked 'school bus' as required by Code Ann. § 68-311 ... and, in fact, was not marked in any way to

indicate that it was transporting school children. So, the coach company regularly operates busses used in transporting school children to and from Cascade Heights School, according to the petition, and *even though it has a license to operate as a common carrier this does not exempt it from marking such busses 'school bus' when and while they are being so used in transporting school children.* The statute plainly says that '[a]ll motor vehicles used in transporting school children to and from schools shall be distinctly marked "School Bus" on both front, rear, and sides thereof, in letters of not less than five inches in length, etc.' *To operate the bus in transporting school children without its being so marked, under the circumstances alleged in the petition, was negligence per se.*" (Emphasis supplied.) *Dishinger,* 84 Ga. App. at 505, supra.

The undisputed facts of the instant case demonstrate that the operation of the MARTA bus on December 1, 1978, falls squarely within the "circumstances" held in *Dishinger* to show the operation of a "school bus" rather than the "incidental" transporting of school children which was shown in *Hanks.* Those facts are as follows: The MARTA bus route in question, P-164, was, at the times relevant to the instant appeal, a regularly scheduled MARTA route but one in which the determinative factor for the establishment of that regular schedule was the transportation of school children, not the general public. On each day of the school year, a MARTA bus would leave the garage at approximately 2:15 p.m. and proceed to the driveway of Jeffrey Tuck's school, the first scheduled stop of the route. The bus would then apparently wait for the end of the school day before beginning its route. On certain days, the school principal or a teacher assisted the children from the school in boarding the bus. On occasion, the principal or teacher asked the MARTA driver to wait past the scheduled departure time or told the driver that all the children from the school had boarded the bus, indicating that the driver need not wait until the scheduled departure time to leave the school grounds. Although the bus followed a predesignated route after leaving the school, one of the children, the "Safety Patrol," instructed the driver where to stop along the route in order to let the other children off. This is the procedure which was followed on December 1, 1978. Jeffrey Tuck and approximately 29 other children left the school and boarded the MARTA bus which bore no signs designating it as a "school bus." At the first stop requested by the "Safety Patrol," Jeffrey Tuck disembarked, ran in front of the bus and was struck by Rucker's automobile. At that time, all the passengers on the bus were school children. The evidence further establishes that the route and procedure which was followed during the school year and which was being followed on December 1, 1978,

differed from that in effect when Jeffrey's school was *not* in session. During the period when school was not being held, MARTA's route P-164 apparently provided for no stops whatsoever at Jeffrey's school and the actual route which the bus followed was not the same as the one in effect during the school year.

This evidence shows that, at least during the school year and on December 1, 1978, MARTA was operating a "school bus" on its route P-164. "There is . . . a difference in the manner of operating a school bus and a common carrier. The school bus ordinarily takes on school children at the street or highway in front of their homes and carries them to the school grounds; after school hours the children again board the bus at the school and each child is taken to his respective home. [A common carrier] mak[es] a scheduled run on a regular line; it [takes] on school children and other passengers at various points along the line and carrie[s] them, not to their homes but to certain established stopping places, which might be near or far from the passengers' intended, ultimate destinations." *Hanks,* 86 Ga. App. 658, supra. Under the evidence in the instant case, the transportation of children from Jeffrey's school to certain points designated by the "Safety Patrol" was not merely "incidental" to MARTA's common carrier duty of transporting members of the general public. The children were boarded en masse at the schoolyard — which was the originating point of the route — and were carried to points, designated by the "Safety Patrol" not MARTA, as close to their respective homes as was possible. The children were not picked up indiscriminately along a regularly scheduled common carrier line. The route was tailored to meet the transportation needs of the school children, not the general public, and the children were not merely "incidental" public passengers on the MARTA bus.

MARTA seeks to avoid categorizing its route P-164 during the school year as a "school bus" route by asserting that it had a policy and practice of permitting any regular fare-paying passenger to ride the bus serving that route after it had left the schoolyard and had begun its run. Although there were no such passengers on the bus on December 1, 1978, MARTA asserts that its policy and practice in this regard precludes a finding that the bus on which Jeffrey was riding was a "school bus." In addition to *Hanks,* supra, MARTA premises its argument in this regard upon Code Ann. § 68A-101 (46) (b), which defines a "school bus" as: "A motor vehicle operated by a local transit system, which shall meet the equipment and identification requirements of section 68A-706 (c) of this Title: *Provided, however, that such vehicle shall be a school bus only while transporting school children and no other passengers, to or from school.*" (Emphasis supplied.) We construe Code Ann. § 68A-101 (46) (b) and subsection

(c) (3) of Code Ann. § 68A-706, referred to in the statutory definition of "school bus," to mean that use of a local transit authority bus for "special school route service," as was MARTA's route P-164, necessitates a compliance with the "school bus" identification and equipment requirements.

The determination of whether a vehicle operated by a local transit system is required to meet the identification and equipment requirements of Code Ann. § 68A-706 (c) is based upon whether that vehicle will be used for "special school route service." Having in effect elected that its route P-164 would be "primarily used at a given time for the purpose of transporting school children" between school and home (Hanks, 86 Ga. App. at 658, supra), MARTA was bound by that election and the consequent requirements of Code Ann. § 68A-706 (c). Since subsection (c) (3) of the statute requires that the signs identifying the vehicle as a "school bus" be displayed when it is providing "special school route service" and Code Ann. § 68A-706 (d) (4) prohibits use of a "school bus" for purposes other than the transportation of children to or from school or school activities without concealing or covering the signs, it must follow that providing transportation other than to or from school or school activities on a bus providing "special school route service" is unauthorized. This is true because if the bus is being used for "special school route service," it must display the signs and, while the signs are displayed, it cannot be lawfully operated for purposes other than the transportation of school children.

Neither Code Ann. § 68A-1667 (i), enacted after the operative date in the instant appeal, nor the proviso in Code Ann. § 68A-101 (46) (b) gives MARTA the option to elect whether or not to display the required "school bus" signs on a vehicle used for special school route service and to thereby determine whether or not the vehicle being operated is a "school bus." It is clear that Code Ann. §§ 68A-1667 (i) and 68A-101 (46) (b) are legislative adoptions of the holding in Hanks that a bus otherwise being operated as a common carrier for hire is not converted into a "school bus" simply because school children are "incidental" passengers thereon. Therefore, although MARTA had a policy and practice during the school year of using its unmarked bus on route P-164 for purposes other than the transportation of school children from school, the fact that it thus was not in violation of Code Ann. § 68A-706 (d) (4) does not obviate the contemporaneous violation of Code Ann. § 68A-706 (c) (3) by using the bus "for special school route service" without displaying the required signs. "[E]ven though it has a license to operate as a common carrier this does not exempt it from making such busses 'school bus' when and while they are being so used in transporting school

children." *Dishinger,* 84 Ga. App. at 505, supra.

It was not error to grant summary judgment to the plaintiffs on the issue of MARTA's negligence per se through its non-compliance with Code Ann. § 68A-706 (c).

2. MARTA enumerates as error the entry of joint and several judgments on the apportioned jury verdicts. With regard to the verdict for Jeffrey Tuck, the jury's apportionment of damages between MARTA and Rucker was an illegality. "The common-law rule, to the effect that, where several defendants are shown to be liable as tort-feasors, the jury shall assess damages against all of them jointly in one amount, is of force in this State. [Cit.] This being a case for personal injuries, a several verdict against the joint defendants is illegal. [Cit.]" *McCarthy v. Combs,* 78 Ga. App. 426, 427 (50 SE2d 805) (1948). Although the trial court questioned the jury foreman concerning the jury's findings with regard to the liability of both defendants, this questioning did not have the effect of molding the verdict, nor did it establish that the true intent of the jury was other than to return an "illegal" several verdict for Jeffrey. After the brief questioning of the jury foreman, the trial court merely entered a joint and several judgment on the apportioned verdict which was returned for Jeffrey by the jury. "The jury did not find a joint verdict; and counsel and the court could not make one for them . . . The effort to correct the verdict . . . changed the whole character of the finding." *Glore v. Akin,* 131 Ga. 481, 482 (62 SE 580) (1908). "Though the jury may express their meaning in an informal manner and the court has the right to put it in such form and shape as to do justice to the parties, according to the pleadings and the evidence, the court has not the power, by amendment or reformation, to supply substantial omissions or make substantial changes in the verdict as rendered by the jury. [Cit.]" *Davis v. Wright,* 194 Ga. 1, 6-7 (21 SE2d 88) (1942). Nor can it be said that the verdict's apportionment between the two defendants of an otherwise general award of damages is mere surplusage not rendering the entire verdict illegal. Cf. *McCarthy,* 78 Ga. App. 426, supra. Accordingly, the verdict returned for Jeffrey Tuck was illegal and the judgment entered on that illegal verdict must be reversed. Cf. *McCarthy,* 78 Ga. App. 426, supra. "If the judge was not satisfied that the verdict as returned was proper, before receiving the verdict he could have required the jury to return to the room and correct its verdict under proper instructions from the court . . ." *Parrish Bakeries v. Wiseman Baking Co.,* 104 Ga. App. 573, 575 (122 SE2d 260) (1961).

With regard to the apportioned verdict returned for S. J. Tuck on his claim for Jeffrey's medical expenses, the entry of a joint and several judgment was also error, but for a different reason. S. J.

Tuck's claim in this regard was for damage to his own property right. *Krasser v. O'Dell,* 89 Ga. App. 718 (2) (80 SE2d 852) (1954). As such, an apportioned verdict was authorized. See generally *Jones v. Hutchins,* 131 Ga. App. 808, 809 (2) (207 SE2d 224) (1974). The trial court should have entered judgment on the verdict for S. J. Tuck as it was returned by the jury, apportioning the damages awarded to S. J. Tuck between MARTA and Rucker. "The court had authority to amend the verdict in matter of form, or to put it in such shape as to speak the true intent of the jury in accordance with the pleadings and evidence; but it did not have authority to write a new verdict different from the one returned by the jury." *Davis,* 194 Ga. at 9, supra. We therefore direct that, on the return of this case to the trial court, a final judgment be entered for S. J. Tuck on the verdict as it was returned for him. *Davis,* 194 Ga. 1 (4), supra.

3. For the reasons discussed in Division 2 above, the judgment for Jeffrey Tuck is reversed and the judgment for S. J. Tuck is affirmed with direction.

*Case No. 63811*

4. All of the enumerations of error in the cross-appeal go to the issue of liability. Affirmance of the judgment for S. J. Tuck on the main appeal renders any of the errors enumerated in the cross-appeal harmless as to him. "It is well established that with respect to rulings of the trial court, submission of evidence and instructions with respect to issues which were decided in favor of appellant, any such errors are harmless to appellant. [ Cits.]" *Mundy v. Cincinnati Ins. Co.,* 141 Ga. App. 106, 108 (1) (232 SE2d 621) (1977). Accordingly, the cross-appeal is affirmed as to the judgment for S. J. Tuck. The cross-appeal will therefore be considered as applicable only to cross-appellant Jeffrey Tuck, the reversal of whose judgment on the main appeal necessitates a new trial at which liability will again be at issue.

5. The exclusion of certain testimony asserted to be relevant to the issue of MARTA's negligence is enumerated as error. On appeal, no real explanation of how the excluded testimony would have been relevant on this issue has been made. Presumably, the argument is that the testimony would have established that the place where the MARTA bus stopped on December 1, 1978, and Jeffrey alit was dangerous by showing that the bus on route P-164 "normally" stopped at another place.

" 'Generally, it may be said that it is not permissible, for the purpose of establishing whether a condition at one place is dangerous, to show conditions at places other than the one in question . . .' [Cit.]" *Underwood v. Atlanta & West P. R. Co.,* 105 Ga. App. 340, 356 (124

SE2d 758) (1962). "The inquiry being what was proper to be done under given circumstances at a particular point, proof of what was usually done at a point near by under different circumstances can not illustrate the question." *Atlanta Ice &c. Co. v. Mixon,* 126 Ga. 457 (2) (55 SE 237) (1906). Moreover, it appears that the only act of negligence asserted against MARTA was its violation of Code Ann. § 68A-706 (c) and, therefore, any evidence concerning the "normal" stopping place for the MARTA bus on route P-164 would be irrelevant to MARTA's "negligence per se" in failing to comply with the identification and equipment requirements for "school busses." There was no error in the exclusion of this testimony.

6. Error is enumerated upon the giving of the following jury instruction: "I charge you that the defendant MARTA, was not bound to foresee and guard against casualties which were not to be reasonably expected or which would not have occurred save under exceptional circumstances. In other words, the defendant, MARTA, cannot be held responsible for a consequence which is merely possible or just remotely probable."

"Negligence consists of exposing another to whom one owes a duty, . . ., to a foreseeable unreasonable probability of harm." *Ellington v. Tolar Construction Co.,* 237 Ga. 235, 238 (227 SE2d 336) (1976). That MARTA was "negligent" in the instant case and that, as a consequence, no issue remained with regard to MARTA's breach of a duty owed to Jeffrey Tuck to guard against the foreseeable harm which befell him, was established when the trial court properly granted Jeffrey summary judgment as to MARTA's violation of Code Ann. § 68A-706 (c). "[T]he purpose of marking [and equipping] such a conveyance [as a 'school bus'] is for the protection of the children being transported therein and to safeguard them against danger from other motor vehicles and the traveling public. Had the bus here involved been marked 'school bus,' as required by law, this would have been notice to the defendant, [Rucker], to stop, and the injury sustained by [Jeffrey] would probably not have occurred, certainly not, had [Rucker] obeyed the law and stopped his car . . .." *Dishinger,* 84 Ga. App. at 505, supra. Once MARTA's violation of the statute had been established, the only remaining issues concerning MARTA's ultimate liability for Jeffrey's injuries consisted of whether MARTA's negligence was a proximate cause of those injuries *(Peek v. Miller,* 119 Ga. App. 138, 139 (4) (166 SE2d 377) (1969)), and whether Jeffrey was himself contributorily negligent and, if so, to what extent. See generally *Brewer v. Gittings,* 102 Ga. App. 367, 373 (4) (116 SE2d 500) (1960).

Insofar as the charge quoted above instructed the jury that it would be authorized to find that Jeffrey's being struck by an

automobile was not a foreseeable consequence of its violation of Code Ann. § 68A-706 (c) and that MARTA was not therefore negligent as to Jeffrey, it was erroneous and should not be given at the new trial.

7. The remaining enumeration of error is not addressed, as it involves an issue not likely to recur at the new trial.

*In Case No. 63810 judgment for Jeffrey Tuck affirmed in part and reversed in part; judgment for S. J. Tuck affirmed with direction. In Case No. 63811 judgment for Jeffrey Tuck reversed; judgment for S. J. Tuck affirmed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED JUNE 29, 1982 —
REHEARING DENIED JULY 16, 1982 IN CASE NO. 63810 — 

*Terrence Lee Croft, Lawrence L. Thompson,* for appellant (case no. 63810).

*Stephen L. Goldner, Howard M. Lessinger,* for appellees (case no. 63810).

*Stephen L. Goldner,* for appellants (case no. 63811).

*Terrence Lee Croft, Howard M. Lessinger,* for appellees (case no. 63811).