SARAH JO MIKES, A MINOR, BY JAMES MIKES, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. ANN BAUMGARTNER AND OTHERS. SHELDON HULTGREN AND ANOTHER, APPELLANTS.

152 N. W. (2d) 732.

August 18, 1967—No. 40,377.

424

*Davis & Strauman, John Lindstrom, Winter, Lundquist & Sherwood,* and *Donald B. Pedersen,* for appellants.

*Quinlivan, Quinlivan & Williams, Johnson, Schmidt & Thompson,* and *O. C. Adamson II,* for respondents.

KNUTSON, CHIEF JUSTICE.

This case arises out of an injury sustained by Sarah Jo Mikes, a 14-year-old freshman, shortly after she alighted from a school bus on her way home. The school bus was owned by defendant L. H. Dickey, doing business as Dickey Bus Service, and driven by defendant Sheldon Hultgren, who had been so occupied for a period of only 5 days after receiving his chauffeur's license authorizing him to drive a school bus.

The bus left Willmar High School at approximately 4 p. m. on a clear day and proceeded south on Highway No. 71. Preceding it was another school bus from Blomkest Grade School. As the two buses proceeded south they approached an intersecting county road, at which point the Blomkest bus turned right, that is, to the west, and the bus on which Sarah Jo was riding came to a stop a few feet north of the intersection with its right front wheel off the pavement and its left front wheel and both rear wheels on the pavement. It was the intention of the driver of this bus also to turn west on the county road when he had discharged Sarah Jo and her sister. The evidence is somewhat conflicting as to when the driver of the latter bus extended the stop sign which all buses must carry and activated the red flashing lights. The stop sign is extended from the bus by a handle within the bus and when that is done the handle presses a button which activates the red flashing lights. However, the evidence is quite convincing that the stop sign and the lights were activated before Hultgren opened the bus door to permit Sarah Jo and her sister to leave, and for the purposes of this decision we assume that to be a fact. In any event, the door was opened and Sarah Jo and her sister alighted and walked in front of the bus. Defendant Ann Baumgartner was at that time approaching from the south in an automobile owned by defendant Roger D. Baumgartner. Traveling with her was a passenger, Mrs. Karen Soltis. Mrs. Baumgartner testified that she first noticed the bus when she was three or four city blocks from the intersection. She was at that time traveling 60 to 65 miles per hour. She noticed the Blomkest bus had turned the corner and was proceeding west and she saw one of the two girls leave the second bus. She stated that she was then about two blocks away and she slammed on her brakes hard and felt the car go out of control. She let up on the brake pedal to gain control of the car and stepped on it when she was a few feet south of the intersection, but again began to lose control of the car and again let up on the brake pedal; and when she was about in the middle of the intersection she pressed on the brake a third time and the rear end of the car "fishtailed" in a clockwise direction, the rear end crossing the centerline and striking Sarah Jo, who was standing in front of the bus, throwing her into the front end of the bus.

Mrs. Baumgartner's car landed in the east ditch and there was some dispute in the testimony as to whether it was facing southeast or southwest, but that is immaterial.

While the distance of the Baumgartner car from the bus when Sarah Jo and her sister emerged cannot be established with exactness from the estimates given by the witnesses, there is no dispute that Mrs. Baumgartner was so close that, traveling at the speed she admits she was going, she was unable to stop within the distance that separated the two. Skid marks were left on the highway for about 180 feet. No one disputes the fact that Mrs. Baumgartner was negligent and that her negligence was a proximate cause of the accident.

The jury returned a verdict against all defendants. The trial court denied a motion for a new trial on the issue of liability, but granted a motion for a new trial on the issue of damages on the ground that the amount returned by the jury was excessive. The owner of the school bus and the driver appealed. Mrs. Baumgartner and her husband have not appealed. While the school bus owner and driver claim that the driver, Hultgren, was guilty of no negligence, the main thrust of the appeal is that, even if he were, the extreme negligence of Mrs. Baumgartner was a superseding intervening cause insulating the negligence of Hultgren, whatever it was. There are also some contentions that the court erred in its instructions to the jury, which will be discussed hereinafter.

■ Statutes of this state relating to the transportation of school children on buses provide a measure of control of approaching traffic by the operator of the bus, and require all school buses to be equipped with a stop signal arm and flashing red signals to be activated by the driver under most conditions where he permits children to leave the bus or stops to pick them up. Minn. St. 169.44, subd. 2, provides, among other things:

"Where school children must cross the road before boarding or after being discharged from the bus, the driver of a school bus or a school bus patrol *may* supervise such crossings making use of the standard school patrol flag or signal as approved and prescribed by the commissioner of highways." (Italics supplied.)

Section 169.45 provides:

"The state board of education *shall* adopt and enforce regulations not inconsistent with this chapter to govern the design, color, and operation of school buses used for the transportation of school children, when owned and operated by a school district or privately owned and operated under a contract with a school district, and these regulations shall be made a part of any such contract by reference. Each school district, its officers and employees, and each person employed under such a contract is subject to these regulations." (Italics supplied.)

Pursuant to this statutory mandate the State Board of Education has adopted certain regulations regarding the operation of school buses. Regulation 240 provides in part:

"(2) The driver shall:

"(aa) Bring the vehicle to a complete stop on the right side of the road, parallel to the center line.

"(bb) Extend the stop-order signal arm.

"(cc) Open door to discharge pupils only after all traffic from the front or rear has come to a complete stop.

"(dd) Continue to keep the stop-order signal arm extended until all the pupils have been loaded or unloaded safely or have crossed the road safely.

"(3) The driver shall be responsible for safely delivering the pupils who must cross the highway to the left side of the road by one of the following methods:

"(aa) The pupils shall pass around IN FRONT OF the vehicle and cross the road only upon receiving word from the driver, or

"(bb) The pupils shall pass around IN FRONT OF the bus and be conducted across the road by the school bus patrol, or

"(cc) The driver shall personally conduct the pupils across the road."

The driver admits that after he let the two sisters out of his bus, he did none of the required things to see them safely across the road. He argues that the regulations quoted above are inconsistent with Minn. St. 169.44 in that the statute provides that where school children must

cross a road before boarding or after being discharged from the bus, the driver of the bus or the school bus patrol *may* supervise such crossing, while the regulation provides that he *shall* supervise such crossing. It seems to us that the mandate of § 169.45 that the State Board of Education *shall* adopt and enforce regulations not inconsistent with this chapter grants sufficient authority to the board of education to adopt a rule requiring the driver to supervise the safe crossing of children over a highway. While the statute provides one method of protecting children, it does not require that such method shall be exclusive. The court instructed the jury that violation of these statutes or regulations is prima facie evidence of negligence under § 169.96. Certainly a violation of the provisions of c. 169 would be prima facie evidence of negligence, and inasmuch as we are convinced that § 169.45 authorizes the State Board of Education to adopt regulations for the proper operation of a school bus, it would seem that the prima facie rule shall apply to such regulations as well as to specific statutes. We are convinced that the court did not err in so holding.

■ The principal, and more difficult, question relates to whether the negligence of Mrs. Baumgartner was an intervening cause insulating the negligence of Hultgren in failing to abide by the statutes and regulations relating to the operation of a school bus. Appellants rely for the main part on Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788.

The facts in Medved are not at all similar to the case now before us. In that case a truck driven by Doolittle became disabled on the highway. He left it parked while he went for help, leaving only 18 feet of unobstructed highway when the law required 20 feet. An estimated 500 automobiles safely passed the truck while it was so parked. Medved, driving a car in which his wife was riding as a passenger, in broad daylight ran into the rear of the truck causing her death. We held that Medved's gross negligence was an intervening, superseding cause. With respect to the applicable rule we said (220 Minn. 357, 19 N. W. [2d] 791):

"* * * Generally speaking, a superseding, intervening cause is an act of plaintiff or of a third person, in no way caused by defendant's

negligence, or a force of nature, occurring *after* defendant's negligent act or omission and operating as an independent force to produce the injury. A superseding, intervening cause breaks the chain of causation set in operation by defendant's negligence, thereby insulating his negligence as a direct cause of the injury. * * *

* * * * *

"* * * Defendants should be relieved of liability, not because the husband's conduct might be criminal, but because it operated to cause the collision independently of the prior negligence of defendants in parking the truck on the highway. The standing truck involved no danger to about 500 other drivers who passed it. It involved danger to decedent only because of the extraordinary and culpable negligence of her husband. Under the circumstances, defendants' prior negligence was an occasion or condition, but not a proximate cause of the accident."

Even though the court and counsel had a lengthy consultation about the instructions and the issues that would be given to the jury prior to the court's charge, no request was made that intervening cause be included and it was not. It is now claimed that this omission, as an error with respect to fundamental law, can be raised for the first time on appeal, citing Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744. Of course, if the negligence of Mrs. Baumgartner was not an intervening or superseding cause, there was no error in omitting the instruction from the court's charge.

What is an intervening or superseding cause that will insulate the negligence of an original wrongdoer is, like many other areas in the law of negligence, something that is not easy to define. There is no absolute yardstick by which it can be measured. Each case must more or less stand on its own facts. Search for a similar case in which it has been held that the action of the second wrongdoer was or was not an intervening cause leads into a labyrinth of decisions from which can be plucked one that will fit just about any fact situation. Many of the cases talk in terms of foreseeability or unforeseeability of the action by the second wrongdoer, but those, too, present a test that is quite unsatisfactory. In a case such as this it is primarily a question of defendant's

430

obligation or duty to the injured plaintiff.[1] In other words, was the duty of the first wrongdoer a continuing one or was it something that had come to rest? If it was a continuing duty, the first wrongdoer would not be relieved from the consequences of his negligence merely because another concurring act of negligence came into play to bring about the result. It is obvious that here the regulations governing the operation of a school bus recognize unpredictability of children. Thus they are not to be discharged until all traffic approaching from either direction has come to a stop. This duty is not discharged simply by extending the stop sign and activating the flashing lights. Once having permitted the children to leave the bus, the driver is under a further and continuing duty to guide them safely across the highway if they must cross. While appellants argue that plaintiff was in a safe position even though outside the bus, had the approaching car stayed on its side of the road, the fact remains that the duty to protect the children continued until they were safely on the other side of the highway—either by keeping them in the bus until it was safe for them to cross, or by guiding them when they were outside the bus. Nor does the fact that the Baumgartner car was so far away when the children were discharged that in the absence of gross negligence Mrs. Baumgartner could have stopped the car relieve the driver of the bus of his duty. The bus driver is given authority to control traffic approaching the bus while taking on or discharging children and a further duty to protect the children from danger caused by negligent failure of approaching traffic to obey the signs he gives. If it were certain that approaching traffic would stop in obedience to the driver's signals, other precautionary measures would be unnecessary; but the fact that some drivers do not obey stop signs is the very reason for the necessity of regulations requiring school bus drivers to protect the children until they are in a place of safety. We are convinced here that the negligence of Mrs. Baumgartner was not an intervening cause and that the jury could find that the failure of the driver of the school bus to follow the regulations with which he was familiar was a concurring cause in bring-

---

[1] See, Prosser, Torts (3 ed.) § 51, p. 313.

ing about the injuries, by permitting the school children to be in a place of danger.

■ Appellants also argue that it was error for the court to read to the jury the regulations adopted by the board of education. Inasmuch as these regulations are adopted pursuant to the requirement of law, we think they would have the force and effect of law. Any other holding would render them valueless. We see no error in reading them to the jury as part of the tests to be applied in determining whether the bus driver exercised that degree of care which was required of him.[2]

■ The case was submitted to the jury on a special verdict. It is now claimed that the court erred in the form of the verdict. One of the questions submitted to the jury with respect to liability was, "Was Ann Baumgartner guilty of negligence which was a direct cause of the accident?" The same question was submitted with respect to the negligence of Hultgren and the contributory negligence of plaintiff. It is the position of appellants that the question is double and that the issues of negligence and proximate cause should have been submitted as separate questions. Here the position of appellants was made known to the trial court before he charged the jury. While we think it would be better to submit the case on separate questions for the reason that it is possible for a party to be guilty of negligence which is not the proximate cause, and it would be impossible to separately answer the questions as submitted, we feel that here there was no reversible error because any negligence of either driver in this case would surely be a proximate cause. The question might become serious if we were persuaded that the negligence of Mrs. Baumgartner was or could have been an intervening cause; but we are persuaded otherwise, so we do not think there was any harm in submitting the case to the jury on the questions as framed.

In view of our decision on the main issues we see no need of discussing other matters raised by the appeal.

Affirmed.

---

[2] Foster v. Herbison Const. Co. 263 Minn. 63, 115 N. W. (2d) 915.