JAMES F. VOGT, TRUSTEE FOR HEIRS OF JAMES MARTIN VOGT, v. BRUCE ALLEN JOHNSON AND OTHERS. WILLIAM WESSELL AND ANOTHER, RESPONDENTS.

153 N. W. (2d) 247.

September 22, 1967—No. 40,482.

154

*Ryan, Ryan & Ebert* and *Robert J. Ryan,* for appellant.

*Meagher, Geer, Markham & Anderson, G. T. MacIntosh II,* and *O. C. Adamson II,* for respondents.

MURPHY, JUSTICE.

This is an appeal from a judgment in favor of defendant-respondents, William Wessell and Elmer Reichert, doing business as Reichert Bus Service, in an action for death by wrongful act brought by plaintiff father, James F. Vogt, as trustee, for damages resulting from the death of James Martin Vogt, his 7-year-old son. The child was struck and fatally injured by an automobile driven by defendant Bruce Allen Johnson. The jury returned a verdict against all defendants. The trial court granted a motion for judgment notwithstanding the verdict in favor of defendants Wessell and Reichert. Defendant Johnson did not appeal.

Plaintiff contends that there was sufficient evidence to support the verdict as to all defendants and that the trial court erred in granting judgment notwithstanding for respondents.

It appears from the record that the accident occurred at the intersection of Highway No. 25 and Barryville Road in the environs of Brainerd, Minnesota. Highway No. 25 is a 2-lane paved road which runs north and south between Merrifield and Brainerd. On the morning of the accident, December 12, 1963, the weather was clear, the temperature was about freezing, and there were patches of ice, frost, and snow on the highway. Defendant Wessell, the operator of the bus, had begun his daily chore of gathering children to transport them to school. His route took him out of Brainerd, north on Highway No. 25 to a point a short distance north of Barryville Road, where he would turn around on the same road and collect children at appointed places on the return trip to Brainerd. It was his general practice to permit the children to board the bus only on the return trip where they would be waiting for him on the west side of the highway. This was not a hard-and-fast rule and sometimes, particularly in inclement weather when children were

waiting on the east side, he would permit them to board the bus on the northbound journey.

At about 7:30 a. m. on this particular day, James F. Vogt had brought his two minor sons to the intersection of Highway No. 25 and Barryville Road, where they joined two other children who were waiting to be picked up by the bus at the northwest corner of the intersection. At about this time the school bus was approaching the intersection from the south. It had made previous stops to pick up children who were waiting on the east side of the highway, and there was evidence that the deceased child could have observed that the bus stopped to pick up children who crossed from the west side of the highway at a point about a half mile south of the Barryville intersection. As the school bus approached the Barryville intersection, its speed was reduced and it came to a stop in the middle of the intersection after the accident occurred. There are conflicting inferences as to whether the bus driver intended to stop at the intersection to pick up the children or whether he slowed down as a cautionary measure because of their presence at the intersection. There was evidence that from 12 to 14 children normally came from both the east and the west of the highway to gather at this point to be picked up by the bus. In any event, as the bus approached the intersection and before it reached it, the decedent child left his companions at the curb, darted into the highway, and was struck and killed by an automobile coming from the opposite direction driven by defendant Johnson.

In the recent case of Mikes v. Baumgartner, 277 Minn. 423, 152 N. W. (2d) 732, we discussed the statutes relating to the transportation of school children on buses and noted that they provide a measure of control of approaching traffic by the operator of the bus, and require all school buses to be equipped with safety signals to be activated by the driver under most conditions where he permits children to leave the bus or stops to pick them up. Minn. St. 169.44, subd. 2, provides in part:

"Where school children must cross the road before boarding or after being discharged from the bus, the driver of a school bus or a school bus patrol may supervise such crossings making use of the standard school

patrol flag or signal as approved and prescribed by the commissioner of highways."

Pursuant to statutory authority, the State Board of Education has adopted certain regulations which require the driver of a school bus to observe certain standards of care with reference to stopping and activating the signals which are part of the bus equipment, and which require him to continue to keep the stop-order signal arm extended until all pupils have been loaded or unloaded safely or have crossed the road safely. We do not find evidence in the record which would indicate that the bus driver in the action before us breached any of the duties expressed in the foregoing statute or regulations. Unlike the Mikes case, where there was evidence to indicate that the operator of the school bus may have been negligent in failing to safely deliver or personally conduct children across the road after they had been discharged from the bus, the facts in this case describe an accident which occurred before the operator of the school bus became responsible for the child's safety.

We find nothing in the statute or regulations which would require a finding of negligence on the part of the operator of the bus in varying his practice of taking on board children waiting on only one side of the route. The following testimony was given by the owner of the bus service:

"Q. Do you know of your own knowledge whether you and ultimately your drivers are instructed to pick up children who are standing on the east side of the roadway and pick the children up while the bus is traveling in a northerly direction?

"A. Well, occasionally in inclement weather where the children have a distance to walk and they have crossed the highway and are waiting for the bus we do stop and pick them up on the east side of the road rather than let them stand in the rain or snow."

The driver testified:

"Q. Was it your practice in inclement weather to pick up children who were waiting as you proceeded north on your route?

"A. If I only had to make one stop, if they were all there."

As a basis for negligence on the part of the bus driver, it is argued by plaintiff that "[t]he bus driver approached the intersection at fifteen (15) to thirty (30) miles per hour and 60 to 70 feet south of the intersection slowed to ten (10) miles per hour" after having stopped to pick up children at previous intersections. It is contended that "[u]nder the circumstances it was foreseeable that the children would be in the highway, as they were, and that their lives might be endangered by oncoming traffic, which the defendant was aware of, unless the defendant undertook to guard against injuries to them." Plaintiff does not suggest what affirmative measures the bus driver should have taken. However, it is argued that, because the driver was not always consistent in stopping only on the west side of the highway, the decedent child was led to believe that, on this particular morning, he could board the bus on the east side and that he was induced to cross over by the manner in which the bus driver approached the intersection at a slow rate of speed. It is argued that if the bus driver had maintained the same rate of speed and proceeded through the intersection, the child would not have been induced to run into the highway. It is the contention of respondents, however, that it was the driver's duty to reduce his speed and to slow down as he approached the intersection and that if defendant Johnson, whose automobile struck and killed the child, had approached as cautiously from the other direction, there would have been no accident.

We are persuaded that the application of elementary principles of negligence to the facts here supports the determination of the trial court that there was no actionable negligence on the part of the operator of the bus. It is not disputed that the bus normally picked up children at Barryville Road on the west side of the highway, nor is it disputed that the weather on the day in question was not such that the bus driver would be expected to make an exception to the general rule of not picking up all the children on his trip north. Moreover, the evidence was that the stop on the northbound trip would be made only when all of the children were present, which was not the situation on the day in question.

The alleged negligence of the operator of the bus must be viewed in light of the duty he owed to the child at the time and place of the accident. We pointed out in Austin v. Metropolitan Life Ins. Co. 277

Minn. 214, 152 N. W. (2d) 136, that the common-law test of duty is the probability or foreseeability of injury to the plaintiff and referred to Judge Cardozo's statement in Palsgraf v. Long Island R. Co. 248 N. Y. 339, 344, 162 N. E. 99, 100, 59 A. L. R. 1253, 1256:

"* * * The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."

See, also, 13B Dunnell, Dig. (3 ed.) § 6973, p. 28; Knutson v. Lambert, 235 Minn. 328, 51 N. W. (2d) 580; Schmanski v. Church of St. Casimir of Wells, 243 Minn. 289, 67 N. W. (2d) 644; Connolly v. The Nicollet Hotel, 254 Minn. 373, 95 N. W. (2d) 657, 74 A. L. R. (2d) 1227; Akers v. Chicago, St. P. M. & O. Ry. Co. 58 Minn. 540, 60 N. W. 669; Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; McDonald v. Fryberger, 233 Minn. 156, 46 N. W. (2d) 260; Prosser, Torts (3 ed.) § 30; Restatement, Torts, § 281.

The basis for liability suggested by plaintiff presupposes that the driver of the bus should have anticipated that the rate of speed with which he approached the intersection would increase or diminish the danger of harm which might result from the combination of careless driving on the part of the motorist coming from the opposite direction and the unpredictable conduct of a child standing at the curb. At the time the accident occurred, the driver's responsibility for the safety of the child had not come into existence. The child had not come within the scope of the driver's duty to care for or to protect him, and there were no precautions he could have taken which would have prevented the accident. We agree with the trial court that the evidence of negligence presented by this record is too remote and tenuous to support actionable negligence.

■ It is next contended that the trial court was without jurisdiction to hear and pass upon the motion for judgment notwithstanding because the motion was not heard within 30 days after verdict. It is conceded that the motion was timely made and that it was not heard within the 30-day period provided by Rule 59.03(3), Rules of Civil Procedure. That rule provides:

"A notice of motion for a new trial to be heard on the minutes shall be served within 15 days after verdict * * *; and the motion shall be heard within 30 days after verdict * * * unless the time for hearing be extended by the court for good cause shown during such 30-day period."

The motion was not heard within the 30-day period because of the trial court's serious illness. The motion was set for hearing on May 17, but on May 10 the clerk of court notified the parties that the trial court had sustained a heart attack and would not be available until a later date. In the meantime, the movant secured an order from another district judge staying the entry of judgment until the pending motion for judgment notwithstanding could be heard or disposed of. After the trial court returned to duty on September 8, 1965, he heard the motion and granted it. There is no contention here that there was any prejudice to plaintiff because of the delay, and it seems to us that a sufficient answer to plaintiff's contention is that the clerk's notice to respective counsel of the trial court's illness and of the resulting impossibility of holding the scheduled hearing on the date set, which notice was given with the trial court's approval, constituted a valid extension of time for hearing within the wording, as well as the spirit, of Rule 59.03(3), which permits an extension of time "for good cause shown."

Affirmed.