JOAN E. FORD v. RAYMOND D. STEVENS AND OTHERS.

157 N. W. (2d) 510.

March 22, 1968—No. 40,774.

*Robins & Meshbesher* and *Russell M. Spence,* for appellant.

*Schermer & Gensler, Irvin E. Schermer,* and *Michael Kiefer,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

MURPHY, JUSTICE.

Plaintiff appeals from an order of the district court granting defendants' motion for judgment notwithstanding the verdict and from a judgment entered thereon in a personal injury action. The appeal asserts error in granting the motion for judgment notwithstanding the verdict.

This case arose out of a negligence claim by Joan E. Ford, a passenger, against Radio Cab Corporation, Sidney M. Pilot, its cab driver, and

Raymond D. Stevens, owner of the taxicab. Also joined as a defendant was one Jose I. Juarez, who drove his car into the rear of the taxicab while it had stopped to take on Miss Ford as a passenger.

It appears from the record that Miss Ford resided in an apartment building located on Marshall Avenue, a heavily traveled thoroughfare. She had lived there for 4 years and regularly called the cab company at the same hour each night to take her to her place of employment. Since she was a regular customer, she received priority service, and usually by the time she had called by phone, put on her coat, and walked out of the apartment to the street level, the taxi would be waiting for her in front of the building. The cab was regularly operated by the same driver.

About 7:30 p. m. on the night of the accident plaintiff called the taxi as was her custom and went down to the front door of the apartment building. The cab was waiting. There was nothing to indicate to her that the taxicab lights were not on. She was carrying a large purse and shopping bag. The interior dome light of the cab went on as the driver opened the rear door for her to enter. After she had entered the cab and while she was arranging her purse and bag, the cab was struck from the rear. The cab driver got out, walked back, and met Juarez, the other driver, at the rear of the cab. Its taillights were on since the cab driver had not turned them off while waiting for Miss Ford. Miss Ford also got out and went to the rear of the cab. Juarez was speaking excitedly, half in Spanish and half in English. He said to the driver either "You have no lights on" or "Where are your lights?" The driver pointed to his lights and said, "What's that?" Miss Ford observed that the taillight near the side of the car where she was standing was lighted. She did not observe whether or not the other taillight was on. It is uncontradicted that all of the lights at the rear of the cab, consisting of two taillights and a light on the license plate, and the light on the top of the cab were on.

When the case was called for trial, plaintiff's attorneys could not locate Juarez and dismissed the action against him without prejudice. Plaintiff proceeded against the other defendants, charging negligence in parking the vehicle in an unsafe place and without lighted taillights.

From the evidence it appears that Marshall Avenue is a one-way 3-lane

highway with a 35-mile-per-hour speed limit. On the south side of the street, where the apartment building was located, there was a "No Parking" sign, but standing or stopping was not prohibited. The south lane was not generally used for moving traffic. At the time of the accident there was no stopping place available for the cab on the north side of the street. A verdict was returned for plaintiff, after which the court granted judgment notwithstanding the verdict.

■ It does not seem to be seriously contended that the taxicab driver violated any statute or ordinance by bringing his vehicle to a stop in front of the apartment building in order to take on a passenger. The court correctly instructed the jury: "Stopping at a curb for the purpose of taking in or letting out passengers or occupants of a car is not parking." (See, Minn. St. 169.01, subd. 56.) It seems to be well established that the term "park," as used in a statute or ordinance, does not comprehend or include merely temporary or momentary stoppage but rather connotes a stoppage with the intent of permitting the vehicle to remain standing for an appreciable length of time. Deamer v. Evans, 278 Ala. 35, 175 So. (2d) 466, 468; Lacour v. Continental Southern Lines, Inc. (La. App.) 124 So. (2d) 588, 594.

■ It is generally well established that a taxicab company is a common carrier of passengers and, as such, is bound to exercise the high degree of care for the safety of passengers for hire that is imposed on carriers generally with respect to their passengers. 37 Am. Jur., Motor Transportation, § 154; Annotation, 75 A. L. R. (2d) 988, 990; 14 Am. Jur. (2d) Carriers, § 918; 3A Dunnell, Dig. (3 ed.) § 1261. However, a taxicab carrier is not an insurer of the safety of its passengers. The duty of the cab driver was expressed by this court in McKellar v. The Yellow Cab Co. Inc. 148 Minn. 247, 250, 181 N. W. 348, 349:

"It was the duty of defendant [taxicab company], as a common carrier, to exercise the highest degree of care and foresight for the safety of its passengers consistent with the proper conduct of its business, and to take every reasonable precaution to protect them from injury. 1 Dunnell, Minn. Dig. § 1261; also cases cited in notes found at page 179, Ann. Cas. 1913E, and page 47, Ann. Cas. 1918C. This duty imposed the

obligation to have skilled and careful drivers who were alert at all times to discover and avoid danger."

Fieve v. Emmeck, 248 Minn. 122, 126, 78 N. W. (2d) 343, 347.

■ Plaintiff's principal contention is that defendants should have, from all of the surrounding circumstances, foreseen that there was a risk in stopping to take on the passenger. It is argued that the cab stopped at the curb, waited at least 15 seconds while the passenger entered the car and arranged herself, and that the "cab driver failed to see the Juarez vehicle before impact and gave no warning to appellant." It is contended that "[t]here was conflicting evidence as to whether the cab had its tail-lights turned on at the time of the collision."

It is well established that it is not for the court to weigh the evidence on a motion for judgment notwithstanding the verdict. The issue is a legal one as to whether the party in whose favor the verdict was rendered, under all of the evidence and reasonable inferences to be drawn therefrom, considered in the light most favorable to the verdict, has made out a case against his adversaries. The rule which we follow is expressed in Cofran v. Swanman, 225 Minn. 40, 42, 29 N. W. (2d) 448, 450, where we said:

"A motion for judgment *non obstante* accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence, as well as the credibility of the testimony for the adverse party, and if the application of this rule, in the light of the evidence as a whole, discloses a reasonable basis for the verdict, the motion must be denied. [Citations omitted.]

\* \* \* \* \*

"\* \* \* If, however, upon a search of the entire record, after taking the evidence in the light most favorable to the verdict and giving the adverse party the benefit of every inference reasonably deducible therefrom, the evidence as a whole manifestly and so overwhelmingly preponderates to the contrary as to be practically conclusive against the verdict, the motion for judgment *non obstante* should be granted."

See, also, Godeen v. Bennett, 265 Minn. 179, 120 N. W. (2d) 867;

Rausch v. Julius B. Nelson and Sons, Inc. 276 Minn. 12, 149 N. W. (2d) 1; Rule 50.02, Rules of Civil Procedure.

■  There was no showing here that the traffic at the hour of the accident was so heavy that visibility was limited or that the condition of the pavement made stopping at the point hazardous as in the case of Paulos v. Koelsch, 195 Minn. 603, 263 N. W. 913. On the contrary, the practice of stopping at this point had been followed and apparently approved by the passenger over a period of years. The area was well lighted and traffic did not customarily use the lane. Inasmuch as the taxicab company had no control over the public ways, the driver's only duty was not to stop at a place obviously unsafe or where a reasonably prudent person would perceive probable harm under the circumstances.[1]

It seems to us that when the asserted negligence is viewed in context of the record before us it is so tenuous and lacking in substance as to warrant the determination of the trial court that the evidence as a whole, with its undisputed physical facts, so overwhelmingly preponderates against the verdict and negatives whatever testimony the record might contain to support a verdict as to leave it without reasonable support in the evidence. 10 Dunnell, Dig. (3 ed.) § 5082; 2B Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1079; Rule 50.02, Rules of Civil Procedure.

Affirmed.

---

[1] Upkins v. Downs (La. App.) 169 So. (2d) 256; Schickel v. Yellow Cab Co. 369 Pa. 356, 85 A. (2d) 138.