Mark T. JAM, as Trustee for the heirs
and next of kin of Cory Jam,
deceased, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
# 709, Duluth Transit Authority, (DTA),
et al., Laura Hamre, et al., Respondents.

No. C1–87–628.

Court of Appeals of Minnesota.

Oct. 6, 1987.

Review Denied Nov. 24, 1987.

Robert H. Magie, III, Brian McCarthy, Donovan, McCarthy, Crassweller & Magie, P.A., Duluth, for appellant.

Steven L. Reyelts, Halverson, Watters, Bye, Downs & Maki, Ltd., Gaylord W. Swelbar, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Robert E. Mathias, Mathias & Associates, Duluth, for respondents.

Heard, considered and decided by RANDALL, P.J., and LANSING and MULALLY *, JJ.

## OPINION

LANSING, Judge.

Mark T. Jam, as trustee for the heirs and next of kin of Cory Jam, deceased, appeals from summary judgments entered for Independent School District #709 and the Duluth Transit Authority in this wrongful death action. We reverse and remand for trial.

## FACTS

Cory Jam, an 11–year-old, seventh-grade student, was struck by a car and killed on September 15, 1983, while crossing a street in Duluth, Minnesota, after getting off a Duluth Transit Authority (DTA) bus which transported school children from Woodland Junior High School.

The bus in which Cory Jam had been riding was a standard DTA transit bus not equipped with safety equipment required on school buses by Minnesota statutes and agency rules. In particular, it was not painted national school bus glossy yellow, did not have a sign on it indicating that it was a school bus, and was not equipped with a stop signal arm, prewarning flashing amber signals or flashing red signals. Moreover, the DTA did not furnish instruction or education to their drivers relating to safe transportation of school students, nor did it provide instruction and education to the students riding DTA buses.

The DTA bus was operating under a contract between Independent School District #709 and the DTA which provided that the DTA would transport eligible students to and from school during the 1983–84 school year. Eligible students paid no fare, but carried passes issued by the school district. By contrast, non-eligible students, including students living less than two miles from school, were required to pay a fare of 40 cents. However, the contract must have contemplated the transportation of both eligible and non-eligible students, because student bus stops were provided within the two-mile limit. Cory lived within two miles of Woodland and had paid 40 cents to ride the bus.

It was normal operating practice for DTA buses with seating capacity of about 45 passengers to load around 55–60 students at Woodland. Although the buses were open to the general public, ridership on Cory's bus was, in actual practice, exclusive to students. The routes and schedule for DTA school bus service for the school year 1983–84 was published indistinguishably from private school bus contractors in the Duluth News-Tribune and Herald under the general heading "School Bus Service."

Cory's bus was thus operating on a route and schedule intended to facilitate transportation of students. Although the general public could ride the buses, routes and schedules were determined by the needs of the school district and were in effect only when school was in session. Similarly, the bus stopped at places not designated as public bus stops to drop off the children. The location at which Cory was dropped off prior to the accident was not a posted bus stop.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

It was raining when the bus driver discharged Cory and several other students at the curb in a residential neighborhood on Glenwood Avenue in Duluth. Cory had attended classes at Woodland for only one and a half weeks and had ridden the DTA bus approximately five times. As the bus pulled away, he walked around the rear of the bus and, as he attempted to cross the street, he was struck and killed by a car operated by Laura Hamre and owned by John Hamre.[1]

Mark Jam brought this wrongful death action, alleging that the DTA, I.S.D. # 709 and Brian Havron, the bus driver, were negligent in failing to comply with Minnesota statutes and rules related to the safe transportation of school children. He also alleges that the DTA and Brian Havron were negligent in their failure to comply with common law duties of care in the transportation of Cory.

DTA and Brian Havron moved for summary judgment on the ground that the DTA bus was not a "school bus" and not subject to Minnesota statutes and rules relating to the safe operation of school buses. I.S.D. # 709 also moved for summary judgment on the grounds that it had no legal obligation to provide transportation to Cory Jam.

The trial court ruled that the DTA was not a "school bus" under the statute on February 21, 1986, and granted summary judgment for I.S.D. # 709, leaving for trial only the common law negligence claims against DTA and Brian Havron.

DTA and Brian Havron subsequently renewed their motion for summary judgment on the grounds that they had complied as a matter of law with all common law duties of care owed to Cory, and the trial court granted this motion and entered judgment on January 8, 1987. Mark T. Jam appeals both judgments.

## ISSUES

1. Was the DTA bus operating as a "school bus" subject to Minnesota statutes and school bus rules at the time of the accident?

2. Was I.S.D. # 709's duty to comply with Minnesota statutes and rules for safe operation of school buses eliminated as a matter of law when the child was required to pay for transportation because of the child's proximity to school?

3. Did the DTA, as a matter of law, fulfill all common law duties of care owed to Cory Jam at the time of his death?

## ANALYSIS

### I

■ Minnesota Statutes §§ 169.44–.45 impose affirmative duties on the operators of school buses. Section 169.44 governs the identification, operation and equipping of school buses, and section 169.45 authorizes the Minnesota Board of Education to regulate the design, color and operation of school buses. The rules adopted by the State Board of Education pursuant to section 169.45 include requirements that the driver of a school bus use safety equipment and procedures when loading or unloading the bus. Minn.R. 3520.2400–.2900. Specifically, the rules provide that the driver of a school bus

B. Shall use the prewarning amber flashing signals, flashing red signals, and stop signal arm in accordance with Minnesota Statutes, section 169.44.

\*　　\*　　\*　　\*　　\*　　\*

D. Shall load or unload pupils only where the view is unobstructed to the motorist for 500 feet in either direction.

E. Shall be responsible for safely delivering the pupils who must cross the highway to the left side of the road by one of the following methods: the pupil shall pass around in front of the vehicle and cross the road only upon receiving word from the driver; or the pupil shall pass around in front of the bus and be conducted across the road by the school

1. The Hamres are no longer involved in this action because of a settlement and *Pierringer* release.

bus patrol; or the driver shall personally conduct the pupils across the road.

Minn.R. 3520.2500 (1983).

DTA and I.S.D. #709 argue that the equipment and procedural requirements contained in Minnesota statutes and Board of Education rules do not apply because the DTA bus was not a "school bus" within the meaning of Minn.Stat. §§ 169.44 and 169.-45.

"School bus" was defined for purposes of Chapter 169 as

every motor vehicle owned by a public or governmental agency and operated for the transportation of children to or from school or privately owned and operated for compensation for the transportation of children to or from school.

Minn.Stat. § 169.01, subd. 6 (1983) (rewritten Laws 1984, c. 403). The DTA bus was unquestionably owned by a governmental agency, and it is also clear from the record that the bus was transporting children from school.

The Georgia Court of Appeals considered this issue under very similar facts in *Metropolitan Atlanta Rapid Transit Authority v. Tuck,* 163 Ga.App. 132, 292 S.E.2d 878, 881 (1982), and concluded that the transit authority bus was a "school bus" because the students were boarded en masse at the school yard at the end of the day and carried to points as close to their respective homes as possible; students were not picked up indiscriminately along a regularly scheduled common carrier route; the route was tailored to meet the transportation needs of the school children rather than the general public; and children were not merely incidental public passengers on the transit authority bus. *Id.* 292 S.E.2d at 881–82. Although the case was decided with reference to a different statute, we find the reasoning persuasive.

The statutory definition of public transit vehicles also supports this distinction between buses operating as school buses and those engaged in general public transit:

"Regular route transit" means transportation of passengers for hire by motor vehicle or other means of conveyance by any person operating on a regular and continuing basis as a common carrier on fixed routes and schedules. *"Regular route transit" does not include transportation of children to or from school* * * *.

Minn.Stat. § 174.22, subd. 8 (1983) (emphasis added).

DTA and I.S.D. #709 concede that the DTA bus arguably falls within the school bus definition, but argue that the broad definition of "school bus" in section 169.01 is modified by sections 169.44 and 169.45 to exclude transit buses.

Minnesota Stat. § 169.44 provides:

Every school bus with a seating capacity in excess of 16 persons and every vehicle *purchased* for delivery after April 1, 1977 *for use in the state of Minnesota as a school bus,* with a seating capacity in excess of ten persons including the driver, shall be equipped with a stop signal arm, pre-warning flashing amber signals and flashing red signals. * * * [and] shall be of a uniform color, national school bus glossy yellow. * * * Any bus or vehicle which satisfies these equipment and color requirements and which bears signs containing the words "school bus" * * * shall be deemed to be outwardly equipped and identified as a school bus for purposes of this section.

Minn.Stat. § 169.44, subd. 1a (emphasis added). Both subdivisions 1a and 1b of section 169.44 (1983) distinguish between *vehicles* outwardly equipped and identified as a school bus and those which are not required to be outwardly equipped because of their date of purchase. Subdivision 1b states that buses *not* required to be outwardly equipped and identified as a school bus under subdivision 1a must nevertheless comply with State Board of Education rules:

Subd. 1b. Compliance. Vehicles district owned or under contract transporting school children to or from school which are not required to be outwardly equipped and identified as school buses pursuant to subdivision 1a shall comply with state board of education rules and regulations relating to, but not limited

to, construction, design, equipment, color, indentification, and operation.

DTA and I.S.D. # 709 argue that because Cory's bus was purchased as a DTA bus and not specifically for use as a school bus, it was not required under section 169.44, subd. 1a, to be equipped or marked as a school bus. They assert, therefore, that the operation of Cory's bus was subject only to those statutes and rules pertaining to vehicles not outwardly equipped as school buses. They argue further that because the language of section 169.45, the enabling legislation for administrative regulation, is addressed only to school district and privately owned school buses, not to DTA buses, the agency rules do not apply to them. The enabling statute provides:

The state board of education shall have sole and exclusive authority to adopt and enforce regulations *not inconsistent with this chapter* to govern the design, color, and operation of school buses used for the transportation of school children *when owned and operated by a school district or privately owned and operated under a contract with a school district,* and these regulations shall be made a part of any such contract by reference. Each school district, its officers and employees, and each person employed under such a contract is subject to these regulations.

Minn.Stat. § 169.45 (1983) (emphasis added).

This argument misreads the statute and is flawed in that it misconstrues subdivision 1a, which merely states equipment requirements for school buses, as a definitional section which changes the definition of "school bus." This construction is implausible in that it would permit any vehicle not originally purchased as a school bus to escape the reach of the statute.

Subdivision 1a requires that "[e]very school bus" with a seating capacity in excess of 16 persons be equipped with the specified safety equipment. The definitions section of chapter 169 defines a "school bus" as "every vehicle owned by a public or governmental agency and operated for the transportation of children to or from school." The DTA bus on which Cory was riding is included in that definition and is therefore subject to the safety feature requirements of section 169.44, subd. 1a. In addition, as a school bus the DTA bus is also subject to the rules promulgated by the Minnesota State Board of Education pursuant to Minn.Stat. § 169.45.

## II

Under Minnesota law, the school district was required to provide transportation to students who lived more than two miles from their school. Minn.Stat. § 123.39, subd. 1 (1983). Pursuant to that statute, the school district contracted with the DTA to provide transportation to students who lived outside the two-mile radius and provided those students with free bus passes. However, because Cory lived within two miles of the school, he was not provided a free pass and rode the DTA bus as a fare-paying passenger. The school district accordingly argues that it owed no duty to provide safe transportation to Cory, since it owed no duty to transport him at all.

The existence of a statutory duty to transport is not, however, a prerequisite to the existence of a duty of care. Rather, the common law test of duty for negligence purposes is based on the probability or foreseeability of risk to the particular plaintiff. *Vogt v. Johnson*, 278 Minn. 153, 157–58, 153 N.W.2d 247, 251 (1967). The general rule, expressed by Justice Cardozo in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928), and embodied in the *Restatement (Second) of Torts* § 281(b) (1965), is that an actor is liable in negligence if his or her conduct is negligent with respect to a class of persons of which the plaintiff is a member. Whether conduct is negligent as to a particular plaintiff, and thus whether the actor owes the plaintiff a "duty" for negligence purposes, depends on whether the actor could reasonably have anticipated injury to that person as a result of his conduct. *Id.*, comment c, illustration 2.

In this case the statutes and rules requiring safety features on school buses are clearly intended for the protection of all

school children who ride the buses, since they are not limited to those who live outside a two-mile radius of the school. Cory thus falls within the class of persons intended to be protected by those statutes. Moreover, the statutes were intended to protect against precisely the type of harm that Cory suffered. *Restatement (Second) of Torts* §§ 286, 288. The school district's failure to comply with those rules would result in liability for Cory's injury if the school district could reasonably have anticipated that fare-paying school children could be injured after exiting the bus on their way home from school.

The record presents at least a question of fact as to that issue. The availability of the buses in front of the school at the end of the school day and the convenience of the routes, which were published under the general heading "School Bus Service" and applicable only during the school year, combined to encourage even fare-paying students to ride the DTA buses. Insofar as the school district knew, or could reasonably have anticipated, that students who lived within two miles of the school would use the DTA buses for transportation, the school district's duty to provide safe transportation under the school bus safety rules extended to them as well as to students who lived beyond the two-mile radius. We accordingly reverse the trial court's ruling that the school district was not liable as a matter of law.

### III

 The DTA argues that as to it, Cory Jam was an ordinary fare-paying passenger to whom it owed no further duties once it discharged him in a reasonably safe place.

However, a common carrier must exercise the highest degree of care and foresight for the safety of its passengers consistent with its undertaking. The carrier must employ drivers who are alert to discover and avoid danger. *See Ford v. Stevens,* 280 Minn. 16, 19–20, 157 N.W.2d 510, 513 (1968) (quoting *Fieve v. Emmeck,* 248 Minn. 122, 126, 78 N.W.2d 343, 347 (1956)). A carrier's duty of care continues after the passenger alights from the bus, and encompasses the exercise of reasonable care in selecting a reasonably safe place to discharge a passenger. *See Staloch v. Belsaas,* 271 Minn. 315, 324, 136 N.W.2d 92, 98 (1965).

A higher duty of care is required toward children than toward adults. *Augustine v. Hitzman,* 287 Minn. 311, 314, 178 N.W.2d 227, 229 (1970). This applies particularly to school children, who have a special status in the eye of the law and deserve more than ordinary protection. *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 291, 118 N.W.2d 795, 802 (1962). Courts have recognized the unpredictability of children, especially school children, when they have to cross the street to go home after getting off the bus. *See Mikes v. Baumgartner,* 277 Minn. 423, 430, 152 N.W.2d 732, 737 (1967). A safe place for an adult to alight from a bus may not be a safe place for a child to be discharged.

This duty of care may be defined with reference to statutes and rules concerning the transportation of school children, since the standard of care expressed in a statute or regulation is but a legislative substitute for the applicability of common law. *Lynghaug v. Payte,* 247 Minn. 186, 193, 76 N.W.2d 660, 665 (1956). In particular, the rules promulgated by the Minnesota State Board of Education require that students be unloaded only where there is an unobstructed view to oncoming motorists of 500 feet. Minn.R. 3520.2500 (1983).

Under the facts of this case, it was incorrect for the trial court to decide as a matter of law that DTA had fulfilled all of its responsibilities to Cory Jam. Eleven-year-old Cory Jam was unfamiliar with the site at which he was dropped. He had been attending classes for only one and a half weeks. It was raining. The bus was not operating on a regular DTA fixed route serving the general public, and the drop-off points were not regular bus stops. It cannot be determined from the record whether the view at these drop-off sites was unobstructed to oncoming drivers. All the passengers on the bus that day were school children. The driver was aware that Cory

Jam would have to cross the street to get home, and knew that children had been injured in the past after disembarking from DTA buses.

Because the facts of this case do not allow a determination of whether DTA had in fact discharged its duties to Cory Jam, we also reverse the summary judgment entered in favor of DTA.

## DECISION

Summary judgment was incorrectly entered in favor of I.S.D. # 709 on February 21, 1986, and in favor of DTA and Brian Hamre on January 8, 1987.

Reversed and remanded for trial.

MULALLY, J., dissents in part, concurs in part.

MULALLY, Judge (dissenting in part, concurring in part).

I respectfully dissent in part and concur in part.

The basic facts, procedural aspects and issues of this case are more fully set forth in the majority opinion.

In September 1983 Cory Jam was a seventh-grade student attending Woodland Junior High School, a school located less than two miles from his place of residence.

Independent School District # 709 (I.S.D. # 709) provides free transportation for seventh through twelfth grade students who live more than two miles from school. Since Cory Jam lived within two miles of the school, he was not a student eligible for free transportation.

Eligible students received student bus passes for use on Duluth Transit Authority (DTA) buses for purposes of free transportation to and from school. No student bus pass had been issued to Cory Jam.

There is no dispute as to whether Cory Jam was eligible for transportation between his school and his home. The applicable statute, Minn.Stat. § 123.39, subd. 1, states in part:

In any school district, the Board shall arrange for the attendance of all pupils living two miles or more from the school

through suitable provision for transportation * * *

On the day of the accident, Cory Jam rode the DTA bus as a regular fare-paying passenger, paying the same forty-cent fare. he would have paid to ride a DTA bus at any time to any location; the same bus was at the same time, available for use by the general public upon payment of the required fare. Whether there were in fact other fare-paying passengers on the bus at the time of the accident is not determinative as to the status of the bus.

Respondent I.S.D. # 709 had no legal obligation to provide transportation to Cory Jam. It was not providing transportation to him, and, at the time of the accident owed him no duty under the statutes relating to the operation of school buses.

The DTA bus driven by Brian Havron at the of the accident was not a "school bus" as it related to Cory Jam, and not subject to Minnesota statutes, rules and regulations relating to the safe operation of "school buses." Thus, any question of whether the DTA owes to *eligible* students the duty to paint its buses yellow and equip them with flashing lights and stop signal arms is not germane to the issues in this case.

I would affirm the trial court's award of summary judgment to I.S.D. # 709 on the ground that at the time of the accident it owed no duty to Cory Jam; and its award of summary judgment to DTA on the ground that at the time of the accident the bus on which Cory Jam was riding was not a "school bus" as it related to him, and that DTA owed him no duty under the statutes.

Under the facts of this case, it was error for the trial court to decide as a matter of law that DTA had fulfilled all of its responsibilities to Cory Jam.

A common carrier must exercise the highest degree of care toward its passengers consistent with its undertaking. *See Ford v. Stevens*, 280 Minn. 16, 157 N.W.2d 510 (1968); *Swanson v. Minneapolis Street Railway Company*, 252 Minn. 484, 90 N.W.2d 514 (1958). Whether DTA had exercised this standard of care toward

Cory Jam presented a genuine issue of material fact that could not be disposed of by summary judgment.

I would reverse and remand for trial on the issue of whether the DTA had fulfilled all common law duties of care which it owed to Cory Jam at the time of the accident.