Katherine ANDERSON, a minor, by Ronald C. Anderson and Melinda Pattee, her parents and natural guardians, Appellant (C9–93–2426), Respondent (C5–94–182),

v.

Stephen SHAUGHNESSY, Jr.,
Respondent (C9–93–2426),
Appellant (C5–94–182),

Independent School District
No. 273, Respondent,

and

Stephen SHAUGHNESSY, Jr., Defendant and Third-Party Plaintiff, Respondent (C9–93–2426), Appellant (C5–94–182),

v.

BENJAMIN SHERIDAN CORPORATION, a division of Sheridan Products, et al., Third-Party Defendants, Respondents,

Pursuit Marketing, Third-Party
Defendant, Respondent.

Nos. C5–94–182, C9–93–2426.

Court of Appeals of Minnesota.

July 19, 1994.

Review Granted Sept. 16, 1994.

Richard J. Schieffer, John W. Wood, Jr., Johnson & Wood, P.A., Wayzata, for Katherine Anderson, a minor, by Ronald C. Anderson and Melinda Pattee, her parents and natural guardians.

Mark J. Peschel, Johnson & Lindberg, P.A., Minneapolis, for Stephen Shaughnessy, Jr.

Kay Nord Hunt, Ehrich L. Koch, Marc A. Johannsen, Minneapolis, for Independent School Dist. No. 273.

Richard J. Nygaard, Eric J. Magnuson, Edwin Cheeseboro, Rider, Bennett, Egan & Arundel, Minneapolis, for Benjamin Sheridan Corp. and Pursuit Marketing.

Considered and decided by SHORT, P.J., and SCHUMACHER and HARTEN, JJ.

## OPINION

SCHUMACHER, Judge.

Appellants Katherine Anderson, a minor, by Ronald C. Anderson and Melinda Pattee, her parents and natural guardians, and Stephen Shaughnessy, Jr. argue that the district court erred by granting summary judgment in favor of respondent Independent School District No. 273 (District). Shaughnessy also challenges the district court's grant of summary judgment to respondent Pursuit Marketing (Pursuit). By notice of review, respondent Benjamin Sheridan Corporation (Benjamin Sheridan) claims that the district court erred by denying its motion for summary judgment. We affirm in part, reverse in part and remand.

## FACTS

On April 22, 1992, Shaughnessy purchased a paintball pistol and a number of paintballs from a fellow student.[1] The sale occurred at Shaughnessy's school, Valley View Junior High, which is operated by the District.

That afternoon, Shaughnessy rode a school bus home with Anderson. Before the bus left the school grounds, Shaughnessy took the pistol from his backpack, aimed it out of a bus window, and fired it at a fire hydrant. Another bus driver saw Shaughnessy do this and radioed Manford Jacobson, the driver of Shaughnessy's bus. Jacobson stopped the bus, turned around, and asked if anyone had a weapon. Shaughnessy held the pistol over his head and told Jacobson that it was a water pistol. Jacobson told Shaughnessy to put it away. Shaughnessy returned the pistol to his backpack and the bus continued on its rounds.

A short time later, Shaughnessy and Anderson got off the bus at the same stop. Shaughnessy claims that the pistol dis-

charged while he was shifting his backpack. Anderson claims that the pistol went off while Shaughnessy was pointing it at various objects. In any event, Anderson was hit by a paintball and blinded in her right eye.

The pistol used by Shaughnessy was manufactured in 1990 by Benjamin Air Rifle Company, the entity that survived the 1978 merger of Benjamin Air Rifle and Sheridan Products. The pistol is imprinted with the words "MFG. FOR Pursuit Marketing, Inc., Northbrook, IL 60062" and "Sheridan Products, Racine, WI 53403." Prior to July 1991, Benjamin Air Rifle had a contract with Pursuit to provide paintball pistols to Pursuit for retail sale. In January 1992, Benjamin Sheridan purchased certain assets of Benjamin Air Rifle's air gun business.

## ISSUES

1. Did the district court err by concluding that the District did not owe a duty to Anderson?

2. Did the district court err by granting summary judgment to Pursuit on Shaughnessy's failure to inspect claim?

3. Did the district court err by granting summary judgment to Pursuit on Shaughnessy's failure to warn claim?

4. Did the district court err by granting summary judgment to Benjamin Sheridan on Shaughnessy's failure to warn claim?

## ANALYSIS

■ On an appeal from summary judgment, we determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The evidence must be viewed in the light most favorable to the party against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

■ 1. The rules governing common carriers have previously been applied to the operation of a vehicle defined by statute as a

---

1. The pistol is powered by carbon dioxide and fires capsules filled with paint.

school bus. *Jam v. Independent Sch. Dist. No. 709*, 413 N.W.2d 165 (Minn.App.1987), *pet. for rev. denied* (Minn. Nov. 24, 1987). The use of common carrier principles was appropriate in that instance because the vehicle was owned and operated by the Duluth Transit Authority and the student was a fare-paying passenger. *Id.* at 170. In a case such as this one, where the school bus is operated by a school district and the student pays no fare, a school bus driver's duties are defined by the duties imposed upon school districts, not by the duties imposed upon common carriers. *See Anderson v. Ohm*, 258 N.W.2d 114 (Minn.1977); *Mikes v. Baumgartner*, 277 Minn. 423, 152 N.W.2d 732 (1967); *cf. State v. Rock Island Motor Transit Co.*, 209 Minn. 105, 118, 295 N.W. 519, 526 (1940) (common carrier generally one who transports others "for hire or reward").

The Minnesota Board of Education has authority to create rules governing school bus transportation. Minn.Stat. § 169.45 (1990). The Board of Education has in turn given local school boards authority to adopt necessary rules that do not conflict with state laws or rules. Minn.R. 3520.2900 (1991). The District used this authority to adopt a rule delegating responsibility to bus drivers for the safety of students riding the driver's bus or "loading or unloading at points not immediately adjacent to the school." Independent Sch. Dist. 273 Bus Rules (June 29, 1971) (amended Jan. 14, 1985). The District also adopted a rule prohibiting students from carrying on its buses guns "or any other objects which in the opinion of the driver are dangerous." *Id.*

■ A plaintiff who shows that a school district violated Board of Education rules has made a prima facie case of negligence. *Mikes*, 277 Minn. at 428, 152 N.W.2d at 736. This necessarily implies that a rule established under the Board of Education's authority for the purpose of governing a school district's actions creates a parallel duty on the part of the district. *See Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982) (duty is element of negligence). In other words, the District rules that · made Jacobson responsible for enforcing the prohibition on guns and other dangerous objects

also imposed a duty on him to use care to protect his passengers from harm arising out of violations of the prohibition.

■ Moreover, Jacobson had a duty to use ordinary care to prevent the injuries caused by Shaughnessy's acts even if there had been no explicit rules prohibiting guns on buses. A school district must exercise ordinary care to prevent harm to a student caused by another student's foreseeable, sudden misconduct. *Raleigh v. Independent Sch. Dist. No. 625*, 275 N.W.2d 572, 576 (Minn.1978). Jacobson knew that Shaughnessy had a pistol, and it is clearly foreseeable that a child with a pistol may shoot someone with it. *Johnson v. Clement F. Sculley Constr. Co.*, 255 Minn. 41, 52, 95 N.W.2d 409, 417 (1959). Contrary to the dissent's assertion, Anderson was not let off at a safe place. She was let off in the company of a student with a gun. A school district that knows a student's behavior is potentially dangerous may not avoid its duty to protect the other children within its care simply by transporting them off school property.

■ We intend no opinion as to whether Jacobson acted reasonably or whether his failure to take further action caused Anderson's injury. *See Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 424 (Minn.App. 1993) (breach and causation are generally questions for jury), *pet. for rev. denied* (Minn. Apr. 20, 1993). We merely conclude that the District owed a duty to Anderson, and we reverse the district court's grant of summary judgment to the District.

■ 2. A seller has a duty to inspect a product if it has actual or constructive knowledge that the product is dangerous. *Gorath v. Rockwell Int'l, Inc.*, 441 N.W.2d 128, 132 (Minn.App.1989), *pet. for rev. denied* (Minn. July 27, 1989). Whether the seller knew or should have known of the product's defect is typically a question for the jury. *Crothers ex rel. Crothers v. Cohen*, 384 N.W.2d 562, 565 (Minn.App.1986), *pet. for rev. denied* (Minn. June 13, 1986). To survive summary judgment, a plaintiff must offer some evidence that an inspection of the

product would have indicated the alleged defect. *Gorath,* 441 N.W.2d at 132.

█ Here, Shaughnessy has offered the opinion of a firearms expert that the pistol's safety was defective because it was improperly positioned and could be accidentally disengaged with a minimal amount of force. This evidence suggests defects that may be readily apparent and is sufficient to create a question of fact as to whether an inspection by Pursuit would have indicated that the safety was defective. We reverse the district court's grant of summary judgment to Pursuit on Shaughnessy's duty to inspect claim.

█ 3. Whether a seller has a legal duty to warn is generally a question of law. *Id.* at 133. A duty exists if the harmful occurrence was a direct and reasonably foreseeable consequence of the allegedly negligent act. *Germann v. F.L. Smithe Mach. Co.,* 395 N.W.2d 922, 924 (Minn.1986). No duty arises if the connection between the occurrence and the act is so remote that imposing liability would violate public policy. *Id.* at 924.

█ There is no evidence that the pistol was modified during the relatively short time between its sale and the accident. *Cf. Gorath,* 441 N.W.2d at 133 (multiple alterations during nine years between sale and accident made injury too remote to impose liability). If the safety was indeed defective, and Pursuit was negligent in failing to warn of the defect, Anderson's injury was a direct and foreseeable consequence. Again, we offer no opinion on the questions of breach and causation, which are matters for resolution by the jury. *Germann,* 395 N.W.2d at 924–25. We reverse the district court's grant of summary judgment to Pursuit on Shaughnessy's failure to warn claim.

4. Benjamin Sheridan alleges that even though it was the corporate successor to the pistol's manufacturer, it is entitled to summary judgment because it had no duty to warn Shaughnessy of the pistol's alleged defects. We disagree.

A successor corporation has a duty to warn in certain situations. Relevant considerations include whether the successor took over its predecessor's service contracts, con-

tracted to perform or actually performed service of the product, or knew of product defects and of the location or owner of the product. *Niccum v. Hydra Tool Corp.,* 438 N.W.2d 96, 100 (Minn.1989).

█ The district court denied summary judgment for Benjamin Sheridan because the company had not fully responded to Shaughnessy's discovery requests. Summary judgment should not be granted when an opposing party has been unable to complete relevant discovery through no fault of its own. *Rice v. Perl,* 320 N.W.2d 407, 412–13 (Minn. 1982); *see also* Minn.R.Civ.P. 56.06.

█ In this case, the information requested by Shaughnessy is relevant to his claim against Benjamin Sheridan. Information about customer lists and invoices are relevant to the question of whether Benjamin Sheridan should have known of the location or owner of the pistol. Similarly, information about pending litigation and claims may help determine whether Benjamin Sheridan should have been aware of product defects. We affirm the district court's denial of Benjamin Sheridan's motion for summary judgment on Shaughnessy's failure to warn claim.

5. Shaughnessy has conceded that his strict liability claim against Pursuit and his successor liability claim against Benjamin Sheridan do not have legal or factual support. As he is no longer pursuing these claims, we do not address the issues relating to them.

## DECISION

The District owed a duty to Anderson. The district court erred by granting summary judgment to Pursuit on Shaughnessy's failure to inspect claim. The district court erred by granting summary judgment to Pursuit on Shaughnessy's failure to warn claim. The district court properly denied summary judgment to Benjamin Sheridan on Shaughnessy's failure to warn claim.

**Affirmed in part, reversed in part and remanded.**

SHORT, Judge (concurring in part, dissenting in part).

I concur, except as to the reversal of summary judgment for the school district. As to that issue, I respectfully dissent and would affirm the trial court's decision. The school district had no duty to Anderson after she alighted safely from the bus. Restatement (Second) of Torts § 314A cmt. c (1965). A common carrier is under no special duty to one who has left the vehicle and ceased to become a passenger. *Patton v. Minneapolis St. Ry. Co.*, 247 Minn. 368, 370–71, 77 N.W.2d 433, 435 (1956) (carrier's duty towards passenger ceases once passenger has a reasonable opportunity of getting beyond danger from the vehicle's movement); *Jam v. Independent School Dist. No. 709*, 413 N.W.2d 165, 170 (Minn.App.) (duty of care concerning the transportation of school children ends when the child is left in a place safe for the child), *pet. for rev. denied* (Minn. Nov. 24, 1987). It is undisputed that Anderson was not injured on school property or while riding the school bus, and that she was left at a place safe for children. Because the school district had no duty to prevent Shaughnessy from engaging in tortious conduct off school property, the trial court properly dismissed the negligence action against the school district.