**Gregory P. GORATH, Respondent (C6–88–2322) Appellant (C8–88–2354),**

v.

**ROCKWELL INTERNATIONAL, INC., et al., Defendants and Third-Party Plaintiffs, Appellants (C6–88–2322) Respondents (C8–88–2354).**

**Richard LEWIN, d/b/a Printing Equipment Company and Printing Equipment and Supplies, Respondent (C8–88–2354),**

v.

**DAVIES PRINTING COMPANY, Third-Party Defendant, Respondent.**

Nos. C6–88–2322, C8–88–2354.

Court of Appeals of Minnesota.

May 30, 1989.

Review Denied July 27, 1989.

Charles A. Bird, Bird & Jacobson, Jerome W. Perry, Jerome W. Perry Law Offices, Rochester, for Gregory P. Gorath.

Thomas M. Countryman, Eugene J. Flick, Jardine, Logan & O'Brien, St. Paul, for Rockwell International, Inc., et al., defendants and third-party plaintiffs.

James R. Carlson, Muir, Heuel, Carlson & Spelhaug, Rochester, for Richard Lewin, d/b/a Printing Equipment Company and Printing Equipment and Supplies.

James H. Malecki, Ruth Ann Webster, Gislason, Dosland, Hunter & Malecki, New Ulm, for Davies Printing Company, third-party defendant.

Heard, considered and decided by SHORT, P.J., and RANDALL and KALITOWSKI, JJ., concur.

## OPINION

SHORT, Judge.

Gregory P. Gorath brought a products liability action against the manufacturer and seller of a used paper cutter for injuries he sustained while operating the machine. After discovery was completed, the trial court entered summary judgment dis-

missing the seller from the case. On appeal, Gorath and the manufacturer argue that the trial court erred in granting summary judgment because there are fact issues in dispute regarding appellants' claims against the seller. We disagree and affirm.

## FACTS

On April 21, 1981, Gorath's hand was amputated while he was feeding paper into a Lawson 38–39 inch guillotine paper cutter at his place of employment. Gorath was knowledgeable about and had worked on the paper cutter before the accident. In fact, Gorath had maintenance responsibilities for the machine. On April 21, Gorath was placing some paper underneath the blade of the paper cutter when the blade spontaneously spun around and cut off his hand. Gorath claims he did not touch either of the two hand levers which activate the blade. Although surgeons were able to reattach his hand, Gorath suffered a 40 percent disability to the hand as a result of the accident, and received workers' compensation payments.

The paper cutter was manufactured and originally sold in 1947. The original owner used the machine for over twenty years without any incident. On May 1, 1972, the seller sold the used paper cutter with a thirty day warranty to Gorath's employer. Thereafter, the machine was in use for over nine years before the accident at issue.

The primary safety device for the paper cutter is a two-handed start mechanism. The right lever actually moves the blade, and the left lever is merely a safety feature insuring that the operator cannot operate the blade with one hand while the other hand is underneath the blade. It is undisputed that three component parts of the safety lever are not those originally manufactured.

Gorath's experts attribute the accident to the product's defective design rather than to the replaced parts. By contrast, the manufacturer's expert testified that the replaced parts (a) could have prevented the effective use of the left-hand safety lever, and (b) may have contributed to the accident by preventing the safety lever from returning to its proper position. The seller denies replacing any of the component parts in question. After the accident occurred, Gorath's employer destroyed the paper cutter.

## ISSUES

I. Did the trial court properly grant summary judgment to the seller on Gorath's strict liability claim?

II. Did the trial court properly grant summary judgment to the seller on Gorath's negligence claim?

III. Did the trial court properly grant summary judgment to the seller on Gorath's breach of implied warranty claim?

## ANALYSIS

Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment motion, this court must determine whether there are any genuine issues of material fact, and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to Gorath, the nonmoving party. *See, e.g., Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). This court does not resolve or decide issues of fact, but only determines whether there are issues of fact to be tried. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). When questions of law are raised, this court is free to conduct an independent review of the law. *Service Oil, Inc. v. Triplett*, 419 N.W.2d 502, 503 (Minn.Ct. App.1988), *pet. for rev. denied* (Minn. April 20, 1988) (citing *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn.1985).

The party moving for summary judgment under Rule 56 must demonstrate that no genuine issue of material fact exists.

To defeat a summary judgment motion, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). *See Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 855 (Minn.1986); *Erickson v. General United Life Insurance Co.*, 256 N.W.2d 255, 259 (Minn.1977).

I.

In certain circumstances specified by statute, a nonmanufacturing defendant may be dismissed from a products liability action based on strict liability. Minn.Stat. § 544.41 (1988); *see also* Steenson, *The Anatomy of Products Liability in Minnesota: Principles of Loss Allocation*, 6 Wm. Mitchell L.Rev. 243, 353 (1980). Minn. Stat. § 544.41 provides in part:

\* \* \* \* \* \*

Subd. 2. Once the plaintiff has filed a complaint against a manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant [nonmanufacturer], provided the certifying defendant is not within the categories set forth in subdivision 3.

\* \* \* \* \* \*

Subd. 3. A court shall not enter a dismissal order relative to any certifying defendant even though full compliance with subdivision 1 has been made where the plaintiff can show one of the following:

(a) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;

(b) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or

(c) That the defendant created the defect in the product which caused the injury, death or damage. ·

Because the correct identity of the manufacturer of the paper cutter is known, the seller is not subject to an action based on strict liability in tort unless one of the statutory exceptions applies.

■ Appellants argue that the seller in this case exercised significant control over the product due to his alteration of the paper cutter. *See* Minn.Stat. § 544.41, subd. 3(a). The seller, however, has denied that he altered the product in any way, and appellants have not presented either direct or circumstantial evidence to the contrary. *See, e.g., Glass v. Allis–Chalmers Corp.*, 789 F.2d 612, 613 (8th Cir.1986) (plaintiff must prove that product reached user or consumer without substantial change in the condition in which it was sold). The mere fact that the product may have been altered at some point in its 34–year life does not in itself constitute circumstantial evidence that the seller made those modifications. *See id.* at 614; *see also Rochester Wood Specialties, Inc. v. Rions*, 286 Minn. 503, 508–09, 176 N.W.2d 548, 552 (1970).

Appellants make a related argument under Minn.Stat. § 544.41, subd. 3(c) that there is a factual dispute as to whether the original defect was due to the manufacturer's design or to the seller's modification. This argument also fails because appellants (a) have not presented evidence tending to show that the seller made any modifications to the product; and (b) have not established a reasonable inference that any modification allegedly made by the seller caused the accident. *See, e.g., Stewart v. Ford Motor Co.*, 553 F.2d 130, 137 (D.C.Cir. 1977); *see also Church v. Martin–Baker Aircraft Co.*, 643 F.Supp. 499, 505 (E.D. Mo.1986).

Having failed to show that the seller created any defect that allegedly caused the accident, appellants also have not presented evidence contradicting the seller's testimony that he had no actual knowledge of any defect in the paper cutter. *See* Minn.Stat. § 544.41, subd. 3(b). Appellants have failed to show that any of the statu-

tory exceptions apply in this case. Appellants thus have failed to provide evidence sufficient to survive a summary judgment motion.

Appellants next argue that the entire statute is inapplicable to this case because the seller is also a "manufacturer" within the meaning of the statute by virtue of his alleged alteration of the product. According to appellants, the statute presumes a seller whose function is limited to that of a passive middleman in the sales transaction. The statute, however, clearly contemplates the possibility of a seller who altered the product, knew of a defect, or exercised some control over its design or manufacture. Minn.Stat. § 544.41, subd. 3. We thus reject appellants' argument that the seller's alleged alteration renders the statute inapplicable.

■ Appellants' final argument is that the seller cannot avail himself of the statute because the equipment he sold was used. The statute applies to "products" and does not distinguish between those which are new and those which are used. The statute by its terms applies to "any products liability action." There is no language limiting its application to cases involving design or manufacturing defects in new products nor is there language which compels a nonmanufacturing party to identify all parties who may have altered the product. If the legislature had wanted to place these restrictions on the law, it could have done so. We decline to do so judicially. *See Tuma v. Commissioner of Economic Security*, 386 N.W.2d 702, 706 (Minn.1986).

Our interpretation of the statute renders it consistent with the result reached by other courts. Case law from other jurisdictions holds that the seller of used products should be held in the case if the salesperson was more than a passive middleman and had some involvement with the condition of the product. *See, e.g., Crandell v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31, 34 (S.D.1983); *Peterson v. Lou Bachrodt Chevrolet Co.*, 61 Ill.2d 17, 329 N.E.2d 785, 787 (1975). *See* 1 S. Madden, Products Liability § 3.26 (2nd ed. 1988). Minn.

Stat. § 544.41, subd. 3 essentially requires the nonpassive middleman to remain in the case. Thus, the statute is consistent with this case law and its underlying rationale. Minn.Stat. § 544.41 mandates dismissal of all strict liability claims against the seller.

## II.

Appellants also argue that the trial court erred in granting summary judgment for the seller on Gorath's negligence claim. Appellants contend that the seller (a) negligently failed to inspect the paper cutter, (b) negligently failed to warn the purchaser about the product's design defects, and (c) negligently sold a dangerous product. We disagree.

### A. Duty to Inspect

Sellers have no duty to inspect the products they sell unless they know or have reason to know that the products are dangerous.

> A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it.

Restatement (Second) of Torts, § 402 (1965); *see also Crothers by Crothers v. Cohen*, 384 N.W.2d 562, 564–65 (Minn.App. 1986), *pet. for rev. denied* (Minn. June 13, 1986); *Kothe v. Tysdale*, 233 Minn. 163, 168, 46 N.W.2d 233, 236 (1951).

■ Appellants argue that the seller should have discovered that the paper cutter was not safely designed by the manufacturer, or, alternatively, that it was unsafe as modified. However, the undisputed facts are that the product at issue operated without incident for over 20 years for its first owner and for 9 years for Gorath's employer. Appellants have failed to offer any evidence that an inspection of the paper cutter would have indicated its alleged "spontaneous repeat" condition.

The present case is distinguishable from *Crothers*, where the used automobile caused injury the day after it left the seller's hands due to an obvious defect the seller should have detected. 384 N.W.2d at 563. It is likewise distinguishable from *Kenyon v. F.M.C. Corp.*, 286 Minn. 283, 176 N.W.2d 69 (1970), where the retailer of a riding lawn mower had an independent duty to assemble the mower, and where the plaintiff was injured immediately after the mower was purchased. *Id.* at 286–87, 176 N.W.2d at 71.

### B. Duty to Warn

Whether the seller has a legal duty to warn is ordinarily a legal question to be determined by the court. *Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922, 924 (Minn.1986). The Minnesota Supreme Court has set forth the standard for making that determination:

> [T]he court goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists.

*Id.*

■ In this case, there is a factual dispute as to the alleged negligent act. Gorath's experts state that the injury was caused by a design defect. The manufacturer's expert states that the injury was caused by a worn or replaced part. In light of the multiple alterations to the paper cutter over its 30 year life, the connection between the sale of this used product and the accident some 9 years later is too remote to impose liability as a matter of public policy. *See, e.g., Rients v. International Harvester Co.*, 346 N.W.2d 359, 362 (Minn.Ct.App.1984) (summary judgment granted where age of tractor and evidence of numerous modifications and repairs made it sheer speculation to conclude that any design defect caused the accident).

With respect to the modified part theory, a seller is only liable for injuries resulting directly from product modifications made by the seller. *See, e.g., Porter v. C.A. Dawson & Co.*, 703 F.2d 290, 293 (8th Cir. 1983). Appellants must establish a causative link between the seller, the modifications and the injury. *See* J. Sherman and K. Nichols, *"Foreseeable Product Modification: A Cloak and Shield for the Defense,"* (October 1988). Appellants have not provided any evidence that the seller modified or replaced any of the parts on the paper cutter which allegedly caused the injury. The seller specifically denies that he modified the machine in any substantial way. Under these circumstances, appellants have failed to causally link an act by the seller to Gorath's injury. The seller had no duty to warn Gorath.

### C. Legal Duty Giving Rise to Negligence

■ Gorath also argues that two Minnesota statutes impose liability on the seller. This argument is without basis in law because the two cited statutes were repealed in 1973. *See* Minn.Stat. §§ 182.01 and 182.05 (1971) (repealed 1973). Even if the statute applied to the 1972 sale of the paper cutter, Section 182.01 applies to employees rather than to sellers, and Section 182.05 principally applies to manufacturers. In any event, it generally is the employer's responsibility to see that machines are correctly positioned in the workplace and equipped with proper safety features. *See Huber v. Niagara Machine & Tool Works*, 430 N.W.2d 465, 468 (Minn.1988).

The manufacturer argues that the seller is also negligent under provisions of Restatement (Second) of Torts § 388 (1965). This argument is equally without merit for the reasons set forth in Section II(A) above. Appellants have failed to present any evidence to create a jury issue as to whether the seller should have foreseen that the paper cutter as designed or modified would injure its operator.

### III.

Appellants also claim the trial court erred in dismissing the breach of implied

warranty claim. To establish a warranty claim, a party must prove (a) the existence of a warranty, (b) a breach, and (c) a causal link between the breach and the alleged harm. *Peterson v. Bendix Home Systems, Inc.*, 318 N.W.2d 50, 52–3 (Minn.1982). An implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used." Minn.Stat. § 336.2–314(2)(c) (1988).

The undisputed facts indicate that the paper cutter was fit for its ordinary purpose for over 29 years. Appellants have failed to show (a) that the seller knew or should have known about the product's alleged design defect, or (b) that any parts were worn or dysfunctional at the time of the sale. *See Nelson v. Wilkins Dodge, Inc.*, 256 N.W.2d 472, 475 (Minn.1977); *Heil v. Standard Chemical Manufacturing Co.*, 301 Minn. 315, 324–25, 223 N.W.2d 37, 42 (1974); *see also Kupkowski v. Avis Ford, Inc.*, 395 Mich. 155, 235 N.W.2d 324, 328–29 (1975). Under these circumstances, the trial court properly granted summary judgment for the seller on Gorath's breach of implied warranty claim. *See Rients v. International Harvester Co.*, 346 N.W.2d 359, 362 (Minn.Ct.App.1984).

## DECISION

Appellants have failed to present any evidence that the paper cutter was in bad repair or that the seller knew or should have known about any design defects in the paper cutter at the time of sale. The trial court properly entered summary judgment for the seller.

Affirmed.