647 N.W.2d 1 (2002)
In re SHIGELLOSIS LITIGATION, and Minnesota Horse and Hunt Club, Appellant.
Trigger's Supper Club, plaintiff,
v.
Sunridge Farms, Inc., Bix Fruit Company, Inc., Respondents.
No. C2-01-1696.
Court of Appeals of Minnesota.
June 18, 2002.
*3 Michael C. Lindberg, Susan E. Gustad, Johnson & Lindberg, P.A., Minneapolis, MN, for appellant.
John F. Angell, Louise A. Behrendt, Stich, Angell & Kreidler, P.A., Minneapolis, MN, for respondent Sunridge Farms, Inc.
John M. Anderson, Matthew J. Franken, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, for respondent Bix Fruit Company, Inc.
Considered and decided by TOUSSAINT, Presiding Judge, LANSING, Judge, and FOLEY, Judge.[*]

OPINION
LANSING, Judge.
More than 200 people became ill after eating bacteria-contaminated parsley at a restaurant operated by Horse & Hunt Club. This appeal arises from Horse & Hunt's contribution and indemnity claims against the seller and the importer to allocate the $1,000,000 arbitration liability for the consumers' damages. We affirm the denial of Horse & Hunt's challenges to the jury verdict relating to the importer. But because the produce seller was dismissed before trial without a complaint being filed against the certified manufacturer, we reverse and remand for further proceedings against the seller.

FACTS
Horse & Hunt Club operates an eating facility that served bacteria-contaminated parsley on parsley-buttered potatoes in August 1998. After complaints about a food-borne illness, the Minnesota Department of Health investigated and concluded that the illness resulted from ingestion of parsley contaminated with the shigella bacteria.
Through discovery, Horse & Hunt determined the parsley had been grown in Mexico by Agricola Herendira/Grupo Pas *4 L.L.C. (Grupo Pas); purchased and imported by Sunridge Farms of California; sold first to Bix Fruit Company, a seller and distributor; and then to Horse & Hunt. The Minnesota Department of Health's trace-back investigation disclosed that the water used by Grupo Pas to rinse and ice the parsley in Mexico was untreated and contaminated with shigella bacteria.
The consumers affected by the bacteria sued Horse & Hunt for negligence, per se negligence for violation of food statutes, breach of implied warranties of merchantability and fitness, and strict liability. Horse & Hunt brought a third-party contribution-and-indemnity claim against Bix, the distributor, and against Sunridge, the importer. The district court ordered that the parties address issues of relative fault among the entities in the distribution chain before resolving the consumers' causation and damage claims.
Horse & Hunt initially identified Bix as the parsley manufacturer. But after the close of discovery, Horse & Hunt alleged instead that Sunridge was the manufacturer and moved for summary judgment. Horse & Hunt claimed that Sunridge, as the importer, should be deemed the "manufacturer" of the contaminated parsley because it marketed and sold the parsley under its own trademarked name, "Coastline," and because no party had produced evidence that Horse & Hunt was negligent in handling the parsley.
At the same time, Bix moved for dismissal of strict-liability claims under Minn. Stat. § 544.41 (2000), the "seller's exception" statute, and summary judgment on the remaining claims. Bix identified the Mexican grower, Grupo Pas, as the manufacturer of the contaminated parsley. Horse & Hunt opposed Bix's motion, arguing that the identity of the manufacturer was in dispute, that Grupo Pas was not a party to the litigation, and that Grupo Pas was not subject to jurisdiction in Minnesota courts.
The district court denied Horse & Hunt's motion because of the substantial factual dispute over the identity of the "true manufacturer" of the contaminated parsley. But the court granted Bix's motion for summary judgment based on Horse & Hunt's argument that Sunridge was a manufacturer. The court granted leave to Sunridge to interplead Grupo Pas, but Sunridge instead brought a fifth-party complaint against International Farm Services, who was later dismissed on jurisdictional grounds.
After Bix was dismissed, Horse & Hunt and Sunridge agreed to resolve the consumers' claims through binding arbitration. While the arbitration was proceeding, the affected consumers moved for summary judgment on strict-liability grounds. Horse & Hunt admitted it had sold food contaminated by shigella but opposed the entry of summary judgment until the relative fault of the codefendants was resolved at trial. The court granted summary judgment against Horse & Hunt but stayed entry of judgment until the conclusion of the trial among the codefendants.
Horse & Hunt's contribution-and-indemnity claim against Sunridge was tried to a jury. Horse & Hunt requested jury instructions on strict liability for manufacturing defects (CIVJIG 75.30), negligence of a seller of goods (CIVJIG 75.35), per se negligence based on violation of federal food statutes (CIVJIG 25.45), and implied warranty of merchantability (CIVJIG 22.25, .55). The court declined to instruct on the negligence of a seller, and on breach of warranty on the basis that this claim merged into the strict-liability and negligence claims.
*5 By special verdict, the jury found that the parsley was defective and unreasonably dangerous, Sunridge sold the contaminated parsley but did not manufacture or exercise significant control over it, Grupo Pas manufactured the parsley and was negligent in manufacturing it, and Horse & Hunt was not negligent in using the parsley. Even though the jury found only Grupo Pas at fault, the jury assessed fault to Sunridge (27%), Grupo Pas (65%) and Horse & Hunt (8%). The district court concluded that Horse & Hunt was not entitled to recover against Sunridge and found that the apportionment of fault was inconsistent with the other answers.
Horse & Hunt moved for JNOV and a new trial. The district court denied all post-trial motions. The court confirmed the arbitration awards and ordered Horse & Hunt to fund the awards. Horse & Hunt appeals from the denial of posttrial motions and from the order granting summary judgment to Bix.

ISSUES
I. Can a commercial seller in a strict-liability action be dismissed under Minn.Stat. § 544.41 before a complaint has been filed against the certified manufacturer?
II. Can a commercial seller be liable for negligence in selling contaminated produce if no standard of care for a produce purchaser and reseller has been established?
III. Did the district court err in declining to grant JNOV?

ANALYSIS
The multiple causes of action and the results of pretrial motions have created confusion among the parties. In the appellate submissions, the jury instructions, and the district court memoranda, Horse & Hunt has been misidentified as the "plaintiff," and other references indicate that Horse & Hunt has brought claims of strict liability or negligence against the other defendants.
For purposes of clarity in analysis and in subsequent proceedings, we emphasize that the claims among Horse & Hunt, Bix, and Sunridge are claims among codefendants for contribution and indemnity. See Tolbert v. Gerber Indus., Inc., 255 N.W.2d 362, 366-68 (Minn.1977) (noting indemnity generally shifts loss away from faultless party who is nevertheless liable in tort); City of Willmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 874 (Minn. 1994) (stating contribution "not based upon contract or tort, * * * but on one party paying more than its fair share of a common liability").

I
Horse & Hunt, in its notice of appeal, seeks review of the summary judgment in favor of Bix. In its brief, Horse & Hunt has shifted its focus to argue that Bix should be reinstated in the action under the seller's-exception statute, Minn. Stat. § 544.41, and required to contribute to the arbitration fund for the affected consumers. Because the summary judgment may have precluded the reinstatement process under section 544.41, we construe both claims as an appeal from summary judgment, When we review a grant of summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. Wallin v. Letourneau, 534 N.W.2d 712, 715 (Minn.1995).
The Minnesota Supreme Court adopted the concept of strict tort liability against the manufacturer of a defective product in McCormack v. Hankscraft Co., 278 Minn. 322, 333-34, 154 N.W.2d 488, 497-98 *6 (1967). Three years later, the court clarified that an injured person may also maintain an action for strict liability in tort against the commercial seller of a defective product, even if the seller has no active fault or negligence. Farr v. Armstrong Rubber Co., 288 Minn. 83, 89, 179 N.W.2d 64, 68 (1970) (citing Restatement (Second) of Torts § 402A (1965) (stating commercial seller who sells defective product is liable for physical harm even if seller is not negligent and not in privity with the injured person)).
Strict liability in tort developed from strong public-policy considerations to protect consumers from harm caused by defective products and to impose the cost of defective products on the maker, who presumably profits from the product. See McCormack, 278 Minn. at 338, 154 N.W.2d at 500; Lee v. Crookston Coca-Cola Bottling Co., 290 Minn. 321, 327-28, 188 N.W.2d 426, 431-32 (1971). A key rationale for strict liability in tort is a "risk bearing economic" theory in which merchants and manufacturers have the capacity to distribute their losses among the many purchasers of the product. W. Page Keeton and Dan B. Dobbs, Prosser and Keeton on Torts § 98, at 692-93 (5th ed.1984).
The effect of these strict-liability principles can be harsh on a commercial seller who does not control the design or manufacture of the product and who does not know or have reason to know of the defect. See, e.g., Marcon v. Kmart Corp., 573 N.W.2d 728, 730-31 (Minn.App.1998), review denied (Minn. April 14, 1998) (holding commercial seller with no causal fault responsible, under strict-liability principles, for all causal fault of the manufacturer).
The practical effect of strict-liability principles is to hold a faultless seller jointly and severally liable for the causal fault of the manufacturer. See Hudson v. Snyder Body, Inc. 326 N.W.2d 149, 158 (Minn.1982) (Simonett, J., concurring in part and dissenting in part) (describing strict liability of an inert seller as "vicarious" or "derivative" rather than comparative). But the faultless seller can seek and recover indemnity from the defect-causing party in the product's chain of distribution. See Farr, 288 Minn. at 96-97, 179 N.W.2d at 72 (noting a passive-middleman retailer may recover indemnity from the manufacturer who furnished the defective product); see also Tolbert, 255 N.W.2d at 366-67 (noting common law indemnity shifts entire loss from a party who has no personal fault, but is nevertheless liable in tort, to the at-fault party).
The seller's-exception statute, Minn. Stat. § 544.41, tempers the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a viable source. The seller's-exception statute permits dismissal of strict-liability claims against a seller of a defective product who certifies the correct identity of the manufacturer, but only after a complaint is filed against the manufacturer. Minn.Stat. § 544.41, subds. 1, 2. The seller may not be dismissed, however, if it has played an active role in creating the product defect or had actual knowledge of the defect. Id. at subd. 3(a-c); Gorath v. Rockwell Int'l, Inc., 441 N.W.2d 128, 131-32 (Minn.App. 1989), review denied (Minn. July 27, 1989). The seller's-exception statute sets forth a specific procedure:
Subd. 2. Once the plaintiff has filed a complaint against a manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant, provided the certifying defendant [did not exercise significant control over the manufacture of the *7 product, did not provide warnings or instructions to the manufacturer, did not have actual knowledge of the defect or create the defect]. Due diligence shall be exercised by the certifying defendant in providing the plaintiff with the correct identity of the manufacturer and due diligence shall be exercised by the plaintiff in filing a lawsuit and obtaining jurisdiction over the manufacturer.
Minn.Stat. § 544.41, subd. 2.
A motion to dismiss under the seller's exception is comparable to a rule 12(b) motion to dismiss for failure to state a cause of action. Indeck Power Equip. Co. v. Jefferson Smurfit Corp., 881 F.Supp. 338, 342 (N.D.Ill.1995). The strict-liability claim can be reinstated against the seller at any time the injured party cannot maintain an action against the manufacturer because the manufacturer no longer exists, is insolvent, is not subject to jurisdiction, or cannot be sued. Minn.Stat. § 544.41, subd. 2.
Bix moved for dismissal of strict-liability claims against it based on subdivision 2 of the seller's-exception statute while certifying that Grupo Pas was the parsley manufacturer.[1] In its motion papers, Bix claimed that the seller's-exception statute requires only that the manufacturer be identified, not joined. We disagree. The plain language of the seller's-exception statute requires that the identified manufacturer be served with process prior to dismissal of strict-liability claims against the passive seller. Id. at subd. 2. And it further requires that, before dismissal, the manufacturer must have responded or have the obligation to respond. Dismissal is not appropriate if the plaintiff's action cannot reach a manufacturer or the manufacturer is insolvent. Bastian v. Wausau Homes, Inc., 638 F.Supp. 1325, 1327 (N.D.Ill.1986) (applying similar Illinois statute). The evident purpose of the seller's-exception statute is to ensure the manufacturer can be joined in the lawsuit before the passive sellers are dismissed from strict-liability claims.
None of the parties to the litigation joined or made any attempt to join the alleged manufacturer, Grupo Pas. In some circumstances, it may be within the court's discretion to dismiss before completion of these procedures; for instance, when a plaintiff fails to demonstrate due diligence in filing a complaint against the certified manufacturer. Minn.Stat. § 544.41, subd. 2. But the record does not indicate that this occurred. Horse & Hunt was not the plaintiff in the product-liability action, it was a defendant. Furthermore, the district court granted leave to Sunridge, not Horse & Hunt, to initiate a complaint against the manufacturer. In this case, it was error to dismiss the strict-liability claim against Bix through summary judgment when the alleged manufacturer certified by Bix was not served or joined in the litigation.
In granting summary judgment for Bix, the district court reasoned that dismissal was appropriate under the seller's-exception statute because one of the codefendants, Horse & Hunt, alleged that Sunridge, who was already joined in the litigation, had exercised sufficient control over the parsley to be deemed the "manufacturer" of the parsley. That determination was premature and rejected by the jury.
The statutory language contemplates that: (1) a seller will certify the correct identity of the manufacturer; (2) the plaintiff (i.e., the affected consumers) or the certifying defendant will join the identified *8 manufacturer; and (3) strict-liability claims will be dismissed against the certifying defendant. Minn.Stat. § 544.41, subds. 1, 2. The manufacturer identified by Bix was not joined in the litigation. We reverse summary judgment for Bix and hold that Bix remains potentially liable on the outstanding contribution claims against it.
At the same time the district court granted Bix's motion, the district court denied Horse & Hunt's motion for dismissal under the seller's exception because a "substantial" factual dispute remained on who manufactured the contaminated parsley. The existence of the factual dispute over the identity of the manufacturer, together with the failure to require service on Grupo Pas, underscores the premature nature of the dismissal. The seller's-exception statute allows a nonmanufacturing defendant who did not contribute to the alleged defect to defer strict liability to the manufacturer, but it does not permit the seller to avoid responsibility when the manufacturer cannot be sued.

II
Horse & Hunt contends that it is entitled to a new trial on its contribution claim against Sunridge because of jury-instruction error on ordinary negligence. It argues that the district court failed to instruct the jury that a seller may be negligent and failed to include a special-verdict question on the negligence of Sunridge as seller. In evaluating a motion for a new trial, the district court must consider both the claimed error and whether prejudice has resulted to the moving party. See Meagher v. Kavli, 256 Minn. 54, 61-62, 97 N.W.2d 370, 375-76 (1959).
In declining to grant a new trial, the district court stated that Horse & Hunt had never advanced the theory that Sunridge was negligent in its role as seller but had only maintained that Sunridge was the manufacturer of the parsley. The record does not support that characterization. Although Horse & Hunt, in its summary judgment motion, claimed that Sunridge manufactured the parsley, Horse & Hunt also indicated its intent to establish Sunridge's liability to the affected consumers on alternative theories.
In submitting its trial materials, Horse & Hunt requested a jury instruction under CIVJIG 75.35, Duty of the Manufacturer or Seller to Use Reasonable Care, which instructs the jury that a manufacturer or seller must use reasonable care in the manufacture, assembly, inspection, packaging, and testing of a product. 4A Minnesota Practice, CIVJIG 75.35 (1999). Consistent with this requested jury instruction, Horse & Horse also requested a corresponding question on the special verdict asking whether Sunridge Farms was negligent in manufacturing, assembling, inspecting, packaging, or testing the parsley to protect consumers. In addition, Horse & Hunt indicated several times during in-chambers discussions that it was proceeding on contribution-and-indemnity claims against Sunridge both as manufacturer and seller.
Even though Horse & Hunt preserved its objection for failure to instruct on negligence, we are not persuaded that the district court erred in denying it. We agree that a seller may have independent fault under negligence principles if the seller breached a duty to the injured party. See Schweich v. Ziegler, Inc., 463 N.W.2d 722, 729-30 (Minn.1990) (holding evidence supported finding of negligence against seller who failed to inspect grab bar on tractor it sold); Erickson v. American Honda Motor Co., 455 N.W.2d 74, 77-78 (Minn.App.1990), review denied (Minn. July 13, 1990) (holding evidence supported finding of negligence against a dealer who *9 sold an all-terrain vehicle without providing a safety brochure and video and without showing location of owner's manual). A seller may also be liable in negligence for failure to discover a product defect if the seller knows, or has reason to know, that the product is dangerous. Gorath, 441 N.W.2d at 132 (citing Restatement (Second) of Torts § 402). The negligence of the seller would then be compared with the negligence or strict liability of the manufacturer. See Busch v. Busch Constr., Inc., 262 N.W.2d 377, 393-94 (Minn.1977) (noting ordinary negligence may be compared with strict liability of manufacturer). Thus, theoretically Sunridge could be liable to the affected consumers for negligence.
Horse & Hunt claims that Sunridge failed to use reasonable care in determining whether the parsley it sold was produced under hygienic conditions. Again, this is theoretically possible. But our review of the record shows that Horse & Hunt failed to produce evidence establishing a relevant standard of care applicable to purchasers and resellers of produce. Horse & Hunt presented expert testimony through a food technologist. But in response to cross-examination, the technologist acknowledged that no governmental regulations require a produce purchaser to investigate the growing methods of its produce suppliers; the industry does not have a routine standard for produce purchasers to investigate the growers or visit farms that grow the produce; in general, the produce purchasers who require specific standards for produce farms are very large and typically own or lease their own farms; and testing of produce does not guarantee the purity of the produce because testing involves only one segment of the truckload. The technologist also admitted that he had no knowledge of the methods used in purchasing produce from Mexico, whether farm inspections are allowed in Mexico, and whether the United States government plays any role in inspecting and testing produce imported from Mexico.
Because Horse & Hunt failed to establish a standard of care applicable to Sunridge as a purchaser and reseller of fresh produce, we hold that the district court's failure to instruct the jury on negligence of a seller and to submit a special-verdict question was harmless error.

III
Judgment notwithstanding the verdict is proper when a jury verdict has no reasonable support in fact or is contrary to the law. Diesen v. Hessburg, 455 N.W.2d 446, 452 (Minn.1990). Horse & Hunt appeals the denial of its request for JNOV on three grounds.

A
Horse & Hunt requested JNOV on its claim that Sunridge is per se negligent for introducing adulterated food into interstate commerce, an act prohibited by the federal Food, Drug and Cosmetic Act. See 21 U.S.C. §§ 331, 342 (1994 & Supp. V 1999). This issue fails on both procedural and substantive grounds.
First, the special verdict contains no findings on whether Sunridge violated the federal food statute and whether the alleged violation has a causal connection to the affected consumers' claims. Yet Horse & Hunt asked the district court to enter judgment on the per se negligence claims for violating federal food statutes.
JNOV is essentially a procedural device through which the court substitutes its judgment for the jury's verdict. 1A David Herr & Roger Haydock, Minnesota Practice, § 50.10 (West 1998). But the jury findings are not contrary to the requested judgment; instead, the jury findings *10 on the statutory violation and causation are nonexistent. After reviewing the record, we find that although Horse & Hunt requested a jury instruction on per se negligence that included the relevant federal food statutes, Horse & Hunt did not request a corresponding special-verdict question tailored to discovering whether the federal food statute had been violated and whether such violation was causally connected to the consumer claims, and requiring the jury to include any causal negligence in its apportionment. When the requesting party has not submitted the issue to the jury and fact issues appropriate for jury resolution remain, it is improper for the district court to grant JNOV. See Hartz v. Nelson (In re Estate of Hartz), 437 N.W.2d 749, 752 (Minn.App. 1989) (noting failure to object to special verdict prior to jury submission constitutes waiver).
Second, we are not convinced that the federal food statute at issue establishes a seller's standard of care that supplants the principles of strict liability and negligence developed in modern product-liability law. The statute that Horse & Hunt claims was violated prohibits certain acts:
§ 331. Prohibited acts
The following acts and the causing thereof are prohibited:
(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.
(b) The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce.
21 U.S.C. § 331(a)(b).
This section of the Food, Drug and Cosmetic Act also permits the government to enforce these provisions through the use of injunctions, criminal penalties, and civil fines. See id. at § 332(a) (permitting injunction of most prohibited activities); § 333(a) (permitting imprisonment, criminal fines, and civil penalties for prohibited acts). It does not indicate that the prohibited-act standard gives rise to a civil action.
Violation of a statute may constitute per se negligence. Scott v. Indep. School Dist. 709, 256 N.W.2d 485, 488 (Minn.1977). If a statute defines the fixed standard of care and violation of the statute is conclusive evidence of negligence, the statute creates per se negligence. Id. In determining whether a statute creates a standard of care, we consider the purpose of the statute and the interests it is intended to protect. Id.
Not all statutes supplant the common-law standard of care for a negligence action. For example, a landlord's violation of the Uniform Building Code is not per se negligence unless the landlord, among other things, knew or should have known of the violation and failed to take reasonable steps to remedy the violation. Bills v. Willow Run I Apartments, 547 N.W.2d 693, 695 (Minn.1996). Failing to characterize the statutory standard as per se negligence does not leave the injured person without a remedy, but links negligence with established common law standards. Id. at 694-95; see also Mpls. Employees Ret. Fund v. Allison-Williams Co., 519 N.W.2d 176, 182-83 (Minn.1994) (refusing to supplant longstanding common-law negligence standard of care applicable to brokers with statutory standard in the Minnesota Securities Act).
The federal food statute does not require a food seller to perform an affirmative act such as periodic testing of purchased produce or periodic inspections of the sources of produce. Instead, the provision prohibits the introduction of adulterated food into interstate commerce. If we *11 interpreted this prohibition to establish a statutory negligence standard of care applicable to food sellers, the simple act of selling adulterated food, without more, would constitute conclusive proof of negligence and alter longstanding principles of common law negligence requiring a seller to know or have reason to know of the defect in a product to be held negligent. See, e.g., Gorath, 441 N.W.2d at 132 (noting seller is liable in negligence for failure to discover a product defect if the seller knows, or has reason to know, that the product is dangerous) (citing Restatement (Second) of Torts § 402 (1965)); see also Swenson v. Purity Baking Co., 183 Minn. 289, 290-91, 236 N.W. 310, 311 (Minn.1931) (upholding directed verdict in favor of bread manufacturer on negligence claim for larva embedded in bread when every reasonable precaution was taken to keep bread pure).
Any alleged statutory standard created by this particular food statute is more adequately expressed by Minnesota's common law principles of strict liability. See, e.g., Farr, 288 Minn. at 89, 179 N.W.2d at 68 (1970) (expressing principles of strict liability holding a non-negligent seller liable if the seller sold the defective product). The district court did not err in refusing to grant JNOV on this issue.

B
Horse & Hunt also requested JNOV on grounds that the evidence is conclusive that Sunridge breached its implied warranty of merchantability.
This claim demonstrates the same procedural problem. JNOV is a device allowing the court to substitute its findings for the jury findings when the jury findings have no reasonable support in fact or are contrary to the law. See Diesen, 455 N.W.2d at 452. But the jury did not make any findings on whether Sunridge breached its implied warranty to the affected consumers because the district court declined to allow this theory of recovery to be submitted to the jury. The proper method of review would be a new-trial motion to challenge the district court's refusal to submit this theory of recovery to the jury. See Minn. R. Civ. P. 59.01 (discussing grounds for new trial).
Even if we reached the merits of this claim, however, the implied warranty-of-merchantability claim would likely merge into strict-liability claims. Strict liability and breach of implied warranty of merchantability are closely related and involve similar proof; when an instruction on strict liability is stronger and broader under the case facts, it would be redundant and confusing to instruct on breach of implied warranty. Goblirsch v. W. Land Roller Co., 310 Minn. 471, 475-77, 246 N.W.2d 687, 690-91 (1976) (citing Farr, 288 Minn. at 89, 179 N.W.2d at 68). Correspondingly, this court has twice held that breach of warranty claims merge into strict liability. Westbrock v. Marshalltown Mfg. Co., 473 N.W.2d 352, 356 (Minn.App. 1991), review denied (Minn. Sept. 13, 1991) (citing Bilotta v. Kelley Co., 346 N.W.2d 616, 624 (Minn.1984) for proposition that strict liability, negligence, and implied warranty merge into a single product-liability theory); Cont'l Ins. Co. v. Loctite Corp., 352 N.W.2d 460, 463 (Minn.App. 1984) (citing Farr, 288 Minn. at 93, 179 N.W.2d at 71, for same proposition).
Commentators also endorse this concept of merger. Michael K. Steenson, The Anatomy of Products Liability in Minnesota: The Theories of Recovery, 6 Wm. Mitchell L.Rev. 1, 49-54, 56 (1980) (arguing that implied warranty instructions should not be given when strict liability is applicable); see also Keeton and Dobbs, supra, § 95, at 679-81, § 97, at 691-92, § 98, at 692-94 (discussing development of *12 modern product-liability law and suggesting strict liability in tort is a more realistic theory of recovery than breach of implied warranty in cases when a defective product causes physical harm to persons or tangible things). The district court did not err in refusing to grant JNOV on this issue.

C
Horse & Hunt's third JNOV request challenges the jury's finding that Sunridge was not the manufacturer of the contaminated parsley. The jury found that the Mexican farm, Grupo Pas, was the manufacturer. For two reasons, we affirm the denial of JNOV on this issue.
First, we agree with the district court that the jury finding has a reasonable basis in fact. The evidence at trial demonstrated that Sunridge did not grow the parsley; it purchased the parsley and required that it be packaged in waxed cardboard boxes with Sunridge's brand name, "Coastline." The jury had sufficient evidence to conclude that Sunridge was not the manufacturer and did not exercise significant control over the growth or harvesting of the parsley.
Second, Horse & Hunt did not request a jury instruction defining the criteria for determining who manufactured the parsley. See Restatement (Third) of Torts, Products Liability § 14 (1998) (stating that one engaged in the business of selling who sells, as its own, a product manufactured by another is subject to the same liability as if it were the manufacturer). Indeed, the record reflects that, after deliberations had begun, the jury asked the district court for further guidance in identifying the manufacturer. The district court properly refused to use the procedural device of JNOV to remedy any failure to request an appropriate instruction.

IV
Having determined that Bix's motion for summary judgment was prematurely granted and having dispensed with challenges to the jury verdict, the respective rights of the three sellers Horse & Hunt, Sunridge, and Bix remain unresolved. The jury verdict determined that both Horse & Hunt and Sunridge sold defective and unreasonably dangerous parsley. Neither has active fault or negligence, but both are liable to the consumers under principles of strict liability in tort.[2]
We therefore remand for Horse & Hunt to proceed on its contribution claim against Bix to adjudicate whether Bix also sold the defective parsley. After adjudication on the issue of whether Bix is also strictly liable, Horse & Hunt can pursue an indemnity claim against the Mexican manufacturer, Grupo Pas, or move for reallocation of the 100% causal fault of Grupo Pas among the three passive sellers. See Minn.Stat. § 604.02, subd. 3 (2000) (providing that in claim arising from manufacturing or sale of product, uncollectible amounts shall be reallocated among all other persons in chain of manufacture and distribution).
After reallocation, Horse & Hunt may have a contribution claim against the other passive sellers for the reallocated fault of *13 the manufacturer, Grupo Pas. This is consistent with equitable principles of contribution dictating that "persons under a common burden share that burden equitably." Spitzack v. Schumacher, 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976). By funding the arbitration awards, Horse & Hunt may have paid more than its fair share of this common liability. See City of Willmar, 512 N.W.2d at 874.

DECISION
The district court erred in dismissing Bix through summary judgment under the seller's-exception statute. But the district court did not err in denying Horse & Hunt's motion for a new trial and JNOV. We remand for further proceedings against Bix.
Affirmed in part, reversed in part, and remanded.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Bix also moved for summary judgment on the negligence and warranty claims, and Horse & Hunt does not challenge the district court's grant of judgment on these claims.
[2] In the jury verdict, the jury apportioned fault among Horse & Hunt (8%), Sunridge Farms (27%), and Grupo Pas (65%). The district court found that this apportionment of fault was inconsistent with the other jury verdict answers and the apportionment should be given no effect, and the record supports that finding. The jury specifically found Sunridge Farms was not negligent in manufacturing the parsley and the jury was not asked whether Sunridge Farms was negligent in selling the parsley. The jury also found that Horse & Hunt was not negligent with respect to the use of the parsley.